### HODGE *et al. v.* LEHIGH VAL. R. Co.

#### (*Circuit Court, D. New Jersey*    April 29, 1889.)

1. RAILROAD COMPANIES—CONSTRUCTION OF ROAD—CONSEQUENTIAL DAMAGES.
    A railroad company, authorized by its charter to construct its road in the usual manner, which procures by paying the agreed consideration a conveyance of the land over which the road is to be constructed, is not liable to the former owner for damages arising from the construction of the road where it has exercised reasonable skill and careful judgment in designing and constructing such road.

2. SAME—ALTERATION IN PLANS.
    A railroad company, having acquired by deed the right to construct its road through plaintiff's land, used in bridging a stream three bridges, each having a span of 40 feet.    The road was operated for some years without injury to plaintiff.    The bridges were then reconstructed by the company, and the water-ways or spans extended to 100 feet, whereby water was thrown upon plaintiff's land.    *Held,* that the company was not liable, in the absence of any evidence of neglect of duty on its part or some excess of the power conferred upon it, as the injuries thus resulting must be held to have been included in what plaintiff agreed to receive when he executed the deed.

3. SAME.
    The evidence failed to show clearly that by the alteration in the spans the water was obstructed or forced out of the channel.    The jury awarded a verdict greatly in excess of the injury shown, arising from this source, assuming the bridge to have been a proper subject of complaint.    *Held,* that the verdict would be set aside, as the jury manifestly overlooked the rights acquired by defendant when the road was constructed.

At Law.    Action by Theodore Hodge and others against the Lehigh Valley Railroad Company.

*R. V. Lindabury,* for plaintiffs.

*Thomas N. McCarter,* for defendant.

MCKENNAN, J., (*charging jury.*)    The counsel in this case are so nearly in accord in their statements of the law involved in this case that I do not think it necessary to multiply words about it.    The difference between them is in their application of the well-understood and well-settled principles of law to the facts in the case.    Nor do I propose to advert to the evidence which you have heard, for the reason, in the first place, that I was not here during the examination of all the witnesses, and in the next

place it has been very fully and ably discussed by counsel on one side and the other. The suit is brought by the plaintiff to recover alleged damages for injury done to the land belonging to him by the defendant, the Lehigh Valley Railroad Company. The first question is, had the Lehigh Valley Railroad the right to do what they have done there, from which this injury is alleged to have accrued? The road was constructed originally by the Easton & Amboy Railroad Company, under a charter granted by the state of New Jersey. In that charter the usual powers are given to the company to construct a railroad between the points designated in the charter,—that is, between its termini,—and the powers thus given are ample to enable the railroad company to effect the object of its incorporation; that is, to build a railroad between the points named as its termini in the charter. The company had a right to make such superstructure as is usual and proper for the operation of a railroad, and to repair and maintain that road as may be necessary from time to time. The Lehigh Valley Railroad Company, therefore, was in the lawful exercise of a franchise granted by the legislature, in making the road through the land of the plaintiff. The mode of constructing, or the plans of construction, was left by the charter to the judgment of the railroad company. It was authorized to build the road by law, and neither the plaintiff nor anybody else can gainsay the exercise of that authority by the defendant—to make this road in a manner which is usual and proper in such structures—in order to carry out the purpose which it was authorized to do. The plaintiff had no right to control it, but the matter was left entirely to the sound and honest judgment of the railroad company in the exercise of the franchise conferred upon it by law. Whether it would make a solid embankment in a particular place or not was left to the judgment of the engineers employed by the railroad company. Whether it would make a trestle to construct part of its line was also left to the discretion and judgment of the railroad company, and the plaintiff had no right to interpose his judgment and say that one was better than the other, or worse than the other. The railroad company has to employ skillful engineers, men of experience, men of good judgment, men of skill, in the determination of these matters, and it was not subject to be questioned by anybody else, because the legislature intrusted the discretion involved in this matter entirely to the railroad company itself. All that it was bound to do was, generally, to construct its road in a careful and skillful manner, having regard of course to the rights and interests of the public, as well as of all others who were affected by the exercise of this franchise by the railroad company; and even if an erroneous method was selected by the engineers of the railroad company, and adopted by the railroad company, no negligence whatever is to be imputed to the railroad company on account of this erroneous exercise of its judgment. It is no negligence, but it is the exercise of the right which the law committed to the railroad company, subject to the restrictions which I have stated, that, generally, it shall exercise that franchise conferred upon it in the construction of the road in a careful and reasonably skillful manner. Keeping within that restriction, the

railroad company is not accountable to any one for any error which it might commit in the construction of its road.

Now, the railroad company acquired the right to exercise a franchise conferred upon it by the legislature by resorting to a proceeding which the legislature provided for the benefit of the owners of the land through which the railroad is constructed. In other words, the railroad company has no right to exercise the powers conferred upon it by the charter until it makes compensation, in some form, to the owners of the land which is taken, and over which the railroad is being constructed. The railroad must agree with the owner of the land, or if that cannot be done, then it must apply to the proper tribunal for the appointment of commissioners to assess the damages which are assumed to result from the construction of the railroad over the man's land. In this case such proceedings were instituted in the proper court here in New Jersey. Viewers or commissioners—viewers, they are called in Pennsylvania; commissioners, I believe, in New Jersey—were appointed to estimate the damages supposed to result to the land of the plaintiff by reason of the construction of a railroad. Those proceedings were so conducted that they resulted in a condemnation of the land of the plaintiff, and a computation of the damages which the commissioners so viewing the land estimated would result by reason of that construction. That award has been read to you, and it appears to have been filed, and to have had the effect of a conclusive ascertainment of the damages as between the railroad company and the owner of the land, (unless appealed from by one or the other, which does not appear in this case,) and settled the right of both as to the amount of damages to be paid by the railroad company and to be received by the owner of the land. The amount in this case was not satisfactory to the railroad company, and negotiations, no doubt, were commenced between the railroad company and the owner of the land, the result of which was that a less amount than fixed by the commissioners was agreed to be paid and received. Accordingly, a deed of conveyance was made by the plaintiff, conveying the lands to the railroad company. The deed was executed and delivered, and was for a consideration stated in that deed. That consideration was accepted by the owner of the land, and it had all the effect then of a transfer of the rights of the land-owner and an investiture of the right to construct this road upon the railroad company which the condemnation proceedings would have had, and embraced all the damages which the plaintiff might have recovered by condemnation proceedings. It is not a mere partial release of the damages to which the owner of the land might be entitled which is provided for there, but the construction which the court gives to it is that it relieves the railroad company as effectually from the payment of the damages caused by the construction of the road as the perfected condemnation proceedings would have done. Whatever damages, then, would result necessarily from the construction of that road through the lands of the plaintiff were released to the railroad company, or rather the railroad company was released from all liability for them just as effectually as if the land had been taken by the railroad company under the condemna-

tion proceedings, and they embraced all the damages necessarily resulting from the construction of the road, whether they were in contemplation of the parties or not. If the plaintiff's land was injured by the stoppage of water by that embankment, and that had not been the case before, the company was protected by this arrangement to the extent of its liability from any further damages that it agreed to pay by this deed of conveyance; and, as I remarked before, if damages did result from that cause,—the construction of the railroad,—necessarily resulting and not caused by any fault of the railroad company, the railroad company was not liable. They were covered by this arrangement. It agreed to pay as compensation $3,000, and the other side agreed to accept that for the injury thus caused. The railroad company is liable only for such loss or injury as was occasioned by the negligent exercise of this right; that is to say, by an inconsiderate exercise of it, or by the omission, on the part of the railroad company, to do what it ought to have done in the observance of a reasonable degree of care in reference to it. As has been stated, and a number of cases have been read in your hearing, nothing more than reasonable skill in the exercise of the power granted by the legislature is incumbent upon the railroad company, and if injury results to anybody from this proper exercise of the power, the person so injured has no ground of legal complaint against the railroad company. It appears here that one ground of complaint is that the injury resulted from the insufficient width of railroad bridges over the Raritan river. The determination of the plans and construction and sufficiency of the bridge to pass the water through it from the Raritan river was a matter entirely for the determination of the engineers of the railroad company, if they exercised reasonable skill and careful judgment in the determination and construction of the plans.

But it is alleged further that after this road had been in operation for some years, and no apparent injury resulted from the construction of the road for that period, a change was made in the construction of some of the bridges upon the road, and after that time the injury complained of here accrued, and that, in part at least, is what is complained of, and for that reason damages are claimed by the plaintiff. It appears that when the embankment was constructed through the plaintiff's land there were three bridges made, of the width of 40 feet each,—40-feet spans, —and that while these bridges were maintained in this condition the injury did not accrue to his lands, but that after this change was made and the water-way under the bridges extended, that great injury resulted to the road and land of the plaintiff, by reason of which a considerable number of acres were rendered useless, still more were damaged, and he was deprived of the crossing of the stream on the south side of the road which he had enjoyed before. It is claimed that that was the result of the water passing from the north to the south side of the bridges, and that it greatly impaired the use of his land south of the railroad. The defendant, in the construction of these bridges, as I have already intimated, was, in the exercise of its unquestionable legal right, to construct them according to the judgment of its engineers, as to what is necessary and

proper for the benefit of the railroad company, of course having proper regard to the interests of the owners of the land, or rather being under an obligation to so construct those bridges as to avoid any injury it might properly avoid, without prejudice to the railroad in the construction of the road. But it is alleged that these bridges were reconstructed with a water-way of 100 feet between the piers, and therefore the injury complained of resulted. Now, gentlemen of the jury, the reconstruction of these bridges and the enlargement of the spans was within the unquestionable right of the railroad company. If they found that the arches or spans were not wide enough to afford a sufficient vent to the water passing between them under the arches, and the reconstruction was necessary for the preservation of the railroad, they had a right to so change the arches, but at the same time subject to the duty which I have already referred to, that no avoidable or unnecessary injury should be done to the property of persons upon whose land this work was done. There is no doubt, I suppose, that by the enlargement of the spans there the current of the water passing down through them must have been accelerated, and the washing effect of the water from points above thereby increased; but if the railroad company, in the exercise of an honest judgment, and in the observation of proper skill, found it necessary to increase the water-way under those bridges, so as to preserve their own embankment, and injury thus resulted to the plaintiff, that was within the scope of his claim for damages, originally, and it must be understood to be included in what the land-owner agreed to receive when he executed the deed to the railroad company. In other words, the mere change in the arches of those bridges, without putting in other bridges, as some others might have thought the railroad company ought to have done, was within the right of the company, and if injury did result to the land owner, why, the railroad company is not liable to an action for damages for negligence simply because this injury has occurred from the exercise of its undoubted legal right, and for which the owner of the land had agreed to receive as compensation what the railroad company paid him. So that you are not to consider the mere change made by the railroad company in the enlargement of this water-way, and the subjection of the plaintiff's land to injury, as of themselves evidence of negligence. There must be something more. It must appear that there was some neglect of duty, or some excess of power exercised by this company, to lead to that result, and to subject the railroad company to damages for such an exercise of power.

I think I have stated now with sufficient fullness the principles of law which are applicable to this case, and by which you are to be governed in making up your verdict, and that you understand generally how those principles are to be applied to the evidence upon which you must pass in this case. You must find, therefore, in the first place, that the railroad company was in the exercise of unquestionable power conferred upon them by the legislature in the construction of this road in a mode such as it had a right to determine, and as must be determined by the exercise of a reasonable and skillful judgment on the part of the engineers

whom it selected. You must understand further—there must be no question about it—that, for any damages resulting from the lawful exercise of the power conferred upon it, the land-owner was compensated, and the plaintiff now succeeding to the ownership cannot recover what he might have claimed in the first place, and for which, by agreement between the owner of the land and the railroad company, he was compensated for. In the second place, if any injury has accrued to the plaintiff, it must appear clearly to you that it resulted from the negligence of the railroad company as I have defined it, or of the excess of exercise of the authority conferred upon it by the legislature, or the omission to do what it ought to have done in the exercise of any power conferred upon it by its charter. If you find that there has been no negligence on the part of the railroad company, the plaintiff must fail in this action. If the railroad company has done simply what the law authorized it to do, and has done it in a careful and skillful manner, and injury has accrued to the plaintiff, the railroad company is not responsible. It may be a matter of regret,—it may be a matter of misfortune,—but still, from the necessary and proper exercise of the power which the legislature has conferred upon the railroad company, if any one is injured, why, certainly, the railroad need not pay for it.

Another question was presented by counsel for the defendant, upon which he asked the court to instruct the jury, and that is, that as this railroad was constructed originally by the Easton & Amboy Railroad Company, and the defendant, the Lehigh Valley Railroad Company, is merely operating this road under a written arrangement or agreement with the Easton & Amboy Company, that the defendant, the Lehigh Valley Company, does not thereby sustain such relation to the plaintiff here as to make it liable for damages resulting from what has been done in this case, and that therefore this action cannot be maintained against the Lehigh Valley. I think, gentlemen, that the character of the agreement is such as puts the defendant substantially in the character of a lessee of the Easton & Amboy Railroad Company, and if anything wrong is done, for which, if done by the Easton & Amboy Company, it would be liable, that the defendant also is liable; so that I decline to instruct you as counsel for the defendant asked me to.

That embraces all that I think is necessary to say to you, and you will, therefore, take the case and decide it conformably to the principles of law which I have laid down, and to the evidence, as the evidence, in your judgment, may justify you.

*Mr. McCarter.* Will the court permit me to call its attention to one point which I do not think was presented? There is nothing in the plaintiff's declaration complaining of default in the company for widening the openings at the east end to justify a recovery for that cause, if the jury think the damages were due to that. The complaint here is that the Lehigh Valley Railroad Company continued a nuisance created by the Easton & Amboy Railroad Company. That is the whole complaint. It does not deny that the increase of the opening was done by the Lehigh Valley

Railroad Company, and not by the Easton & Amboy Railroad Company. That is not what the defense is sued for.

*The Court.* That is the description contained in the declaration, and although there may be some plausibility in your suggestion, I think I will decline to instruct the jury that way; that is, that the declaration sets forth as the ground of the injury the defective construction of the bridges over the Raritan river, and does not refer at all to the change made in the width of those bridges along that bank over the brooks. But the case has been tried, and the whole evidence has been directed to that point, as if the injury resulted mainly from the widening of the arches or the water-way of those bridges, and I would like the jury to take that evidence and decide upon it. The case is with you, gentlemen. The jury will understand from that, that at the time of the institution of the suit the plaintiff, as is shown by the declaration, regarded the injury as resulting from the defective construction of the bridge over the Raritan, and made no reference to what is very much more important, as appears by the evidence of the experts, and by argument of counsel; but I will not refer to that any more.

The jury returned a verdict for plaintiffs for $4,000.

---

### ON RULE TO SET ASIDE VERDICT.

Before McKennan and Butler, JJ.

Per Curiam. Is the verdict clearly against the weight of the evidence? This alone, of the several questions embraced in the reasons assigned for setting aside the verdict, need be considered. The principal question on the trial related to the sufficiency of the Raritan bridge to vent the water of the stream, in time of flood. The defendant had an unquestionable right to change the bridges or culverts over the small stream eastward, as the jury was instructed, and the only legitimate reference that could properly be made to what was done there, was in explanation of the fact that the principal damage is of recent date. These changes could not be made a cause of complaint. In considering the sufficiency of the bridge (or rather whether the company had failed in duty by erecting it as it did) the necessities and interests of the railroad, as well as those of the land-owners, must be borne in mind. These considerations involve questions of safety to the public and company, and also of cost. Where the situation is such that the construction of a proper bridge, suited to the circumstances, must necessarily obstruct the stream, to some extent, the land-owners must submit to the obstruction, and the company must make compensation for the damages likely to ensue, as a part of the consequences of building the road. Where a stream, flowing through low lands, spreads out, when flooded, to great width, many times its usual size, a railroad company, crossing it, is not necessarily required to erect a bridge of corresponding length; nor resort to trestles instead of embankments. What should be done under such circumstances must be

settled by engineering skill and judgment. It does not appear that the spans of the bridge in question might not be increased in number and length, if this is necessary to vent the water without obstruction. It is not shown, however, with clearness that the water is obstructed and thus forced out of the channel. On the contrary the weight of the evidence fully justifies a conclusion that it is not. Furthermore, the damages awarded are greatly in excess of the injury shown, arising from this source, even supposing the bridge a proper subject of complaint. The jury has manifestly overlooked or disregarded the fact that the defendant possesses rights on the plaintiff's land, for which he or his predecessors in the ownership were paid when the road was constructed. No error is discovered in the ruling on the trial, nor in the charge, but for the reasons stated the verdict must be set aside. This action is the more imperatively necessary because the verdict, if allowed to stand, would virtually, if not actually, settle the question of enlarging the bridge, as well as the amount due for past injury. The rule to show cause is therefore made absolute, and a new trial is granted.