ELDRIDGE HORD *v.* HOLSTON RIVER RAILROAD COMPANY
*et al.*[1]

'(*Knoxville.*   September Term, 1909.)

1. **RAILROADS.** Owner of land through which a right of way has
   not been acquired may recover damages, but not if such right
   of way has been acquired.

A railroad company may blast rock on its right of way to level
   its roadbed; but if, in doing so, it casts rock upon, and injures,
   the land of an adjoining owner, whose land has not been con-
   demned, and who has not conveyed or agreed to convey a right
   of way, he may recover damages for the injury done; but not
   so as to the owner of a tract through which a right of way has
   been condemned, or who has conveyed or agreed to convey a
   a right of way through it, as such injury from blasting pru-
   dently done, without negligence, would be deemed to have been
   within the contemplation of the parties when the damages were
   assessed in the condemnation proceeding, and to have been
   covered by the award or consideration.   (*Post, p.* 407.)

Cases cited and approved: Carriger v. Railroad, 7 Lea, 388; Rail-
   road v. Hays, 11 Lea, 389; Railroad v. Mossman, 90 Tenn., 157;
   Railroad v. Higdon, 111 Tenn., 121; Dodge v. Commissioners,
   3 Metc. (Mass.), 380; Brown v. Railroad, 5 Gray (Mass.), 35;
   Cary v. Morrison, 129 Fed., 177; Sabin v. Railroad, 25 Vt., 363,
   370, 371.

2. **SAME.** Damages for negligent construction or blasting,
   though right of way has been acquired.

An assessment of damages for the condemnation of a railroad
   right of way does not cover injuries caused by negligent con-
   struction of the road or negligent blasting on the right of way,

---

[1]As to duty of those engaged in blasting as to the safety of
others, see note to Blacknell v. Moorman & Co. (N. C.), 17 L. R. A.,
729.

nor injuries inflicted on a tract other than that out of which the right of way was taken. (*Post, pp.* 407, 408.)

Cases cited and approved: Carriger v. Railroad, 7 Lea, 388; Railroad v. Hays, 11 Lea, 389; Railroad v. Mossman, 90 Tenn., 157; Railroad v. Higdon, 111 Tenn., 121.

**3. SAME.** Sale and conveyance of right of way covers all damages recoverable in a condemnation proceeding.

A landowner's agreement for the sale of a right of way and his conveyance thereof to a railroad company covers all damages, of whatever sort, suffered by him in connection with the tract out of which the right of way was carved, and to which he would have been entitled in a condemnation proceeding. (*Post, p.* 408.)

Cases cited and approved: Railroad v. Swank, 105 Pa., 555, 561; Hannaher v. St. Paul, etc., Co., 5 Dak., 1, 14; Canal Co. v. Lee, 22 N. J. Law, 243, 250; Hodge v. Railroad, 39 Fed., 449, 451; Norris v. Railroad, 28 Vt., 99; Watts v. Railroad, 39 W. Va., 196; Railroad v. Smith, 111 Ill., 363; Connell v. Railroad, 81 Ill., 232.

**4. SAME.** Where a railroad is not liable for blasting and casting rock upon adjoining land, it is liable for its failure to remove it.

Where a railroad company is not liable for casting rock upon adjoining land in blasting its roadbed through such right of way, nevertheless its duty is to remove the rock so cast within the shortest time in which it can be done, and with the least injury to the land, and it is liable for a breach of this duty. (*Post, pp.* 408, 409, 413.)

Case cited and approved: Sabin v. Railroad, 25 Vt., 363, 370, 371.

**5. SAME.** Liable for use of way in hauling to and from its right of way.

A railroad's use of adjoining land for wagon ways in hauling to and from its right of way in preparation and construction of its road is not within the appraisal of damages for the con-

Hord v. Railroad.

demnation or conveyance of the right of way, except as to the mere right of access, and hence the railroad company is liable for the use of such ways. (*Post, p.* 409.)

Case cited and approved: Sabin v. Railroad, 25 Vt., 363, 370, 371.

6. **SAME.** Not liable for blasting resulting in injuries to buildings, crops, and fences adjoining the right of way, when.

Injury to adjoining buildings by blasting operations on a railroad's right of way, and injury to crops and to fences, in so far as they are exposed to the blasting operations, are within the appraisal or consideration paid the landowner for the railroad right of way, as incidental damages, for which he is not entitled thereafter to recover additional damages. (*Post, p.* 409.)

Cases cited and approved: Railroad v. Stovall, 12 Heisk., 1; Vaulx v. Railroad, 120 Tenn., 316, 329, 330; Dodge v. Commissioners, 3 Metc. (Mass.), 380.

7. **SAME.** Cost of removal of stone, with interest, not with rents, is the measure of damages for blasting and casting rock upon adjoining land.

Where a railroad company, in blasting operations on its right of way, casts a quantity of stone on adjoining land, the measure of its liability is the cost of removing the stone from the land, to which is to be added the interest from a reasonable date for completing the removal, but not the rental value of the land. (*Post, pp.* 409, 410, 411.)

8. **SAME.** Liable for value of land only where cost of removing rock blasted and cast upon it is more than its value.

Where land adjoining a railroad right of way was so injured by the casting of rock upon it by blasting operations on the right of way that the cost of removing the rock would be more than the value of the land, the railroad's liability was the market value of the land so injured, viewed as a separate parcel, and not in connection with the whole farm of which it was a part. (*Post, pp.* 410, 411.)

122 Tenn—26

9. **CHANCERY PRACTICE.** Finding of master and concurrence of chancellor based upon an error of law is not binding upon appeal.

The concurrence of the master and the chancellor as to the value of land is not binding upon appeal, where it appears that the concurrence is based upon an error of law. (*Post, p.* 410.)

10. **RAILROADS.** Liable for damages resulting from letting down fences and making wagon ways.

A railroad company is liable to an adjoining landowner for the acts of its construction crews in letting down fences and permitting the entry of stock to destroy crops, and in making wagon ways over the land. (*Post, p.* 411.)

11. **SAME.** Not liable for injuries to fences by blasting and casting rock against them along acquired right of way, when.

Where, after a rail fence had been injured by blasting operations of a railroad company in constructing its roadbed, the landowner erecting a wire fence in place thereof cannot recover for injuries to the wire fence, for the reason that he was not entitled to recover for injuries by the blasting to the rail fence, because necessarily contemplated by a conveyance of the right of way. (*Post, p.* 412.)

12. **SAME.** Liability for fence rails used for firewood by construction crews camped upon right of way.

Where a railroad company camped construction crews on the right of way, it was its duty to furnish firewood to enable them to cook their meals; and hence the railroad company will be liable for the acts of the crew in tearing down the fences of adjoining owners and using the rails for firewood. (*Post, pp.* 412, 413.)

---

FROM HAWKINS.

---

Appeal from the Chancery Court of Hawkins County. —Jesse L. Rogers, Special Chancellor.

Hord v. Railroad.

A. T. BOWEN, for complainant.

C. W. MARGRAVES and J. O. PHILIPS, for defendants.

---

MR. JUSTICE NEIL delivered the opinion of the Court.

The controversy in the present case arises on the following facts:

On the 4th day of April, 1906, the complainant conveyed to the railway company a right of way through his tract of land lying in Hawkins county. The consideration expressed in the deed was $1, but the consideration paid in fact was $250.

The right of way lay over and through a rocky ledge, which had to be reduced to the necessary level by blasting with powder and dynamite.

As the result of the blasting 7.6 acres of very valuable land, belonging to complainant, lying south of the right of way, between the right of way and the river, were completely covered up with stones from the blast. The amount of the debris was so great that it was worth as much as the land to remove it.

Three acres lying immediately west of the 7.6 acres were covered with stones to such an extent that it would cost $150 to remove them.

Damages were claimed for injury to other parts of complainant's farm, and also for injury to fencing, to a barn, and to crops, and for the use of certain wagon

ways worn across parts of the farm over to the right of way.

While the work was in progress the bill was filed, praying for an injunction in case defendants should fail to execute a bond to secure the damages. The bond was executed and filed in the cause, and the work was then resumed.

The chancellor referred the various items of damages claimed to the master, who made a report thereon. Both sides excepted to the report. The chancellor sustained some of the exceptions, and overruled others, and reached the following result:

(1) As to the three acres: He fixed the cost of removing the rock from this land at $150. To this he added two years' rent, for 1907 and 1908, at $30 per year, making a total of $210.

(2) As to the 7.6 acres: He approved the master's valuation of $200 per acre, aggregating $1520. On this sum he allowed interest from January 1, 1907, which at the date of the decree amounted to $216.55.

(3) Damage to upland on the east end of the farm and north of the right of way, by rock cast upon it, and making wagon ways over it, also for destruction of fodder in the same way, all fixed at $125.

(4) For the destruction of a wire fence he allowed $20.

(5) For defendant's conduct in making wagon ways through a twenty-five acre field of grass land he allowed as damages $75.

Hord v. Railroad.

(6) For injury to land on the south side of the right of way, and west of the creek, resulting from rock cast upon it and only partially removed, and to wheat crop, and to fodder on the same land, he allowed $50.

(7) For destruction of a rail fence, $65.

(8) For injury to a crib by rock thrown against it, and destruction of a small quantity of corn, $10.

(9) For throwing rock on an island in the river belonging to complainant, and not removing it, $25.

For the sum which these figures aggregate the chancellor rendered a judgment against both of the defendants, the railway company and McDowell & Co., and the surety on the indemnity bond.

Complainants and defendants all appealed, and assigned errors.

The errors assigned by complainant are as follows: (1) That the chancellor erred in not fixing the value of the bottom land injured at $250 per acre, instead of $200; (2) in not sustaining complainant's second exception to the master's report, which presented the point that the whole 10.6 acres of bottom land (composed of the 7.6 and three acres) were so covered with rock as to be destroyed, or so that it would be worth the value of the land to remove the rock; that, even if the rock could be removed from any part of it, still complainant had lost three years' use of the land, and should have compensation on that basis; (3) in not sustaining complainant's third exception to the report, which made the point that the master failed to

allow anything for 3.8 acres of upland south of the
right of way, destroyed by rock cast, in addition to the
bottom land, worth $10 per acre; (4) because the chan-
cellor failed to sustain complainant's fourth exception
to the report, which was in effect that the 10.6 acres
of bottom land and 3.8 acres of upland were worth to-
gether $3218; (5) because the chancellor sustained the
fourth, fifth, sixth, seventh, eighth, and ninth excep-
tions of the defendants to the report, which resulted
in fixing the sums under numbers 3, 4, 5, 6, 7, and 8,
scheduled above from the decree, which were reductions
from the sums reported by the master.

The railway company assigned the following errors:
(1) That the chancellor erred in fixing the value of the
7.6 acres at $200; (2) in allowing $30 per year rent
for 1907 and 1908 for the three acres; (3) in allowing
interest on the value of the 7.6 acres from January 1,
1907.

Defendants A. S. McDowell & Co. assigned the fol-
lowing errors: (1) That the chancellor erred in ren-
dering any judgment whatever against them; (2) in
not adjudging that, if any damages at all were due from
them by reason of the blasting of rock, it could only
be to the extent of the cost of removal of the rock from
the premises; (3) in adjudging anything against them
for loss of crops and buildings; (4) in adjudging any-
thing against them for the use of wagon ways through
the farm; (5) in allowing complainant $30 per year,
for 1907 and 1908, for the use of the three acres; (6)

in adjudging damages for fences injured or destroyed in the construction of the railway; (7) in adjudging damages against them for any injury done to the crib and corn by blasting.

Before disposing of these assignments, we shall state the principles that control.

A railroad company has the right to blast rock on its right of way in order to level down its roadbed; but if, in doing so, it casts rocks upon, and so injures, the land of an adjoining owner, whose land has not been condemned, and who has not conveyed or agreed to convey the right of way, the latter has the right to an assessment of damages for the injury done. *Dodge* v. *County Commissioners,* 3 Metc. (Mass.), 380; *Brown* v. *Providence, etc., R. Co.,* 5 Gray (Mass.), 35; *Cary* v. *Morrison,* 129 Fed., 177, 63 C. C. A., 267, 65 L. R. A., 659. That such right to blast would exist, and that the blasting, although prudently done, would probably cause injury to adjoining land, must be held to have been within the contemplation of the parties, where damages were assessed in a condemnation proceeding, and, if not actually covered in such assessment, such injury cannot be sued for and recovered later. The matter is *res adjudicata. Sabin* v. *Vermont, etc., R. R. Co.,* 25 Vt., 363, 370, 371. Such assessment, however, does not cover injuries caused by negligent construction of the road (*Carrier* v. *Railroad,* 7 Lea, 388; *Railroad* v. *Hays,* 11 Lea, 389, 47 Am. Rep., 291; *Railroad* v. *Mossman,* 90 Tenn., 157, 16 S. W., 64, 25 Am. St.

Rep., 670; *Railroad* v. *Higdon,* 111 Tenn., 121, 76 S. W., 895); nor injuries inflicted upon a tract other than that out of which the condemned land was taken. An agreement between a landowner and a railroad company to sell the latter a right of way across the tract of the former covers all damages, of whatever sort, to that tract, to which the landowner would have been entitled in a regular condemnation proceeding. He is presumed to have contemplated and arranged for all such damages in fixing the consideration for the contract, and he is therefore remitted to it. *N. & W. Ry. Co.* v. *Swank,* 105 Pa., 555, 561; *Hannaher* v. *St. Paul, etc., Co.,* 5 Dak., 1, 14, 37 N. W., 717; *Delaware, etc., Canal Co.* v. *Lee,* 22 N. J. Law, 243, 250; *Hodge* v. *Lehigh Val. R. Co.* (C. C.), 39 Fed., 449, 451; *Norris* v. *Vermont C. R. Co.,* 28 Vt., 99, etc.; *Watts* v. *Norfolk, etc., R. R.,* 39 W. Va., 196, 19 S. E., 521, 23 L. R. A., 674, 45 Am. St. Rep., 894. For other authorities, see cases cited in 15 Cyc., pp. 800, 801, note 64. Of course, the effect of a deed is the same (2 Lewis on Em. Dom., secs. 293, 568), and the deed covers by implication whatever is necessary to make the enjoyment of the land conveyed effectual, and, where it is conveyed for a particular purpose, then effectual for that purpose (*Chicago, Rock Island & Pac. Ry. Co.* v. *Smith,* 111 Ill., 363; *Conwell* v. *S. & N. W. R. R. Co.,* 81 Ill., 232). But while the railroad company is not liable, under the circumstances stated, for casting rock upon the land, its duty is to remove the rock in the shortest time in which

it can be done, and with the least injury to the land, and it is liable for a breach of this duty. *Sabin* v. *Vermont Central R. Co.,* supra. Use of the adjoining land for wagon ways in hauling to and from the right of way, in preparation and construction of the same, is not within the appraisal, save the mere right of access, and hence must be paid for, even after such appraisal or conveyance. Id. Injury to crops is within the appraisal, as incidental damages. *Paducah & Memphis R. R. Co.* v. *Stovall,* 12 Heisk., 1; *Vaulx* v. *Railroad,* 120 Tenn., 316, 329, 330, 108 S. W., 1142. Injury to buildings by blasting falls under the same rule. *Dodge* v. *County Commissioners,* supra; *Watts* v. *N. & W. Ry. Co.,* supra. The same must be true as to fences, in so far as they are exposed to blasting operations and may be damaged thereby, since injuries of this kind are probable, and should be anticipated in fixing the price of the land.

Applying these principles as we proceed, and others to which we shall incidentally refer, we are of the opinion that the various assignments of error should be so sustained, disallowed, or modified as to reach the following result:

The first ruling in the chancellor's decree, as above scheduled, touching the three acres, is correct, except as to the rents allowed. There is a concurrence of the master and the chancellor as to the cost of removing the rock from this land, as fixed by the chancellor, and there is evidence to sustain it. This closes the contro-

versy on that point. The allowance of rents proceeds upon a different and incorrect theory. The defendants are liable, not as for a taking of the three acres, but only for the cost of removal of the rock. On this sum, $150, they should pay interest from January 1, 1907, which we fix as a reasonable date for completion of removal.

The second ruling in the decree scheduled, as to the 7.6 acres, must be modified. According to the weight of the evidence the value of this land was $100 per acre, and a reduction must be made to that sum. It is true the master and the chancellor concurred on this valuation of $200 per acre; but the concurrence is not binding, because it clearly appears from the record that the chancellor's agreement with the master was based upon an error of law. *Turley* v. *Turley*, 85 Tenn., 251, 256, 1 S. W., 891. The error was in assuming that the value of the land was to be charged as in case of a taking under the law of eminent domain. We have seen that no such charge is to be made for casting rock upon the adjoining land of a landowner who has conveyed the right of way to the railroad company. The charge is for failure to remove the rock within a reasonable time, and is measured by the cost of removal. The witnesses say the cost of removal would equal the value of the land. So evidence was taken to prove the value of the land only for the purpose of fixing by it the cost of the removal of the rock. The value contemplated from this standpoint would be the market value, which

was $100 per acre.  The complainant had several witnesses, who fixed the value on the theory that complainant owned a large body of upland, and that this bottom land added value to the whole farm, as a very important constituent of the whole tract, being very fertile, by far the most fertile land on the farm.  From this point of view they said it would be worth $200 per acre. This was an erroneous method of estimating its value for the purpose indicated.  They agreed that, viewed as a separate parcel or lot of land, it would be worth only $100 per acre.  This was the correct viewpoint.

As to this part of the decree it is insisted by complainant that the rock covered the whole of the three acres, as well as the 7.6 acres, and that the cost of removal should be based on the value of the whole 10.6. This point is closed by the concurrence of the master and the chancellor, and evidence sustaining it.

We think the chancellor acted correctly in allowing interest from January 1, 1907.

The chancellor erred in reducing the third item from $175 to $125.  The evidence shows the former as the correct valuation.  It should be stated that what is referred to as fodder in the items we are now considering was standing corn, which was destroyed, not by blasting, but by the defendants letting down the fences and permitting the stock to destroy the product.  One hundred dollars was assessed for this injury by the witnesses, and $75 for making the wagon ways on the part of the farm indicated.

The fourth item of the decree, concerning the wire fence, is reversed, and nothing is allowed under that head. This wire fence was erected during the period of construction of the roadbed by blasting, and after a rail fence at the same place had been injured by the blast. This wire fence simply took the place of the rail fence, as to danger to be apprehended from the blasting operations. No recovery could be had for the battering of the rail fence with fragments of rock from the blast, because this was an injury necessarily contemplated when the deed conveying the right of way was made, under the authorities above cited.

As to the fifth item, the chancellor's decree, as scheduled, should be modified by raising the sum therein mentioned from $75 to $150, the sum allowed by the master and shown by the evidence.

As to the sixth item, likewise, the chancellor's decree should be modified by raising the allowance from $50 to $100, the amount allowed by the master. The crops upon this part of the land were not destroyed by the blasting, but by reason of defendants' servants tearing down the fence and using it for firewood, thus exposing the crops to marauding cattle. A portion of this allowance ($12.50) is for the cost of removing rock from the portion of the land referred to; the remainder for destruction of the crops in the manner stated.

As to the seventh item, we think the decree should be modifieed, so as to raise the sum to be allowed for the rail fence from $65 to $100. This is the sum shown

by the evidence, and allowed by the master. No claim is made for injury to the rail fence in question by blasting, and nothing is allowed on that head; but the liability is placed on the ground that defendants' laborers tore the fence down and used the rails for stove wood to cook their meals. The defendants insist they are not liable for such acts of their laborers. We think they are. It was their duty to furnish firewood. They had these laborers camped on the work.

The eighth item of the decree is reversed, on grounds already stated.

The ninth item of the decree is affirmed.

The complainant's third assignment of error is sustained, concerning the failure to make an allowance for the 3.8 acres of upland south of the right of way, fully covered by rock from the blast and not removed. For this $38 should be added to the decree.

We do not find there was any negligence in conducting the work of blasting. There is some evidence indicating negligence; but this is fully and satisfactorily explained in the evidence of Mr. McDowell, and no expert testifies that the amounts of powder and dynamite used in any given blast or blasts were excessive, considering the very difficult nature of the material the defendants had to deal with.

It is not necessary that we should attempt to apportion the liability between the railway company and the contractors. They have agreed upon this matter between themselves. The whole amount will be adjudged

in favor of complainant against both of them; also on the indemnity bond.

The costs of the appeal will be equally divided. The costs of the court below will be paid as decreed by the chancellor.