[No. 11113. Department One. June 13, 1913.]

LYMAN HINCKLEY *et al.*, *Respondents*, v. THE CITY OF SEATTLE, *Appellant.*[1]

EMINENT DOMAIN—DAMAGES—AWARD — JUDGMENT — CONCLUSIVE-NESS—RES JUDICATA. A condemnation award for damages to an abutting lot from a fill raising the grade of a street is not *res judicata* or a bar to a subsequent action to recover damages when the fill in the street slid down upon the lot on account of defects in the engineering plans and the failure of the city to condemn sufficient land to sustain the fill, where the subsequent damage was not foreseen by the engineers planning the improvement, and rested in speculation or conjecture until it occurred.

MUNICIPAL CORPORATIONS—IMPROVEMENTS — DAMAGES — CONTRIBU-TORY NEGLIGENCE. It is not contributory negligence for the owner of a lot, injured by a slide by reason of the public improvement of a street, to excavate the lot to a street grade, which was reasonably necessary for the use of the lot.

Appeal from a judgment of the superior court for King county, Myers, J., entered January 10, 1913, upon the verdict of a jury rendered in favor of the plaintiffs, in an action for damages. Affirmed.

[1]Reported in 132 Pac. 855.

*James E. Bradford* and *C. B. White,* for appellant.

*Peterson & Macbride,* for respondents.

CHADWICK, J.—The material facts in this case are not disputed. The plaintiffs are the owners of a lot extending from Dexter avenue to Westlake avenue, in the city of Seattle. The lot slopes from Dexter avenue down to Westlake avenue. The city of Seattle condemned the right to raise the grade of Dexter avenue, to widen it 7 feet, and to make a bank with a slope of one and one-half to one on the property of the plaintiffs. Damages were assessed and paid by the city, and Dexter avenue was improved in accordance with the original plans and specifications. After the fill had been made, the earth that had been put into Dexter avenue began to sink, and was repeatedly filled by the city. In the meantime, plaintiffs had excavated that part of their lot abutting on Westlake avenue so as to make it level with that street. After a time Dexter avenue began to sink, and the fill on the Dexter avenue side of their property began to slide down hill, and the earth in that part of the lot that had been excavated or cut down to the street level bulged or buckled. The foundation of plaintiffs' dwelling house was destroyed and the house had to be removed. We take it from the record that, barring the pushing down of the fill or bank and the buckling of that part of the lot which had been cut to the level of Westlake avenue, there was no great change in the contour of the land. Plaintiffs brought this action to recover damages. From a verdict in their favor, the city has appealed.

The first and principal contention of the city is that all of the issues raised in this case were adjudicated in the Dexter avenue regrade case, and that it is not liable for any damages which may have been caused by the *weight* of the fill imposed upon respondents' property.

Undoubtedly the city believed, when it drew its plans for the regrade of Dexter avenue, that it had condemned enough land for the bank, and to sustain the fill it contemplated and

which it thereafter made in Dexter avenue abutting plaintiffs' property. Appellant invokes the rule that "all matters that were, should have been, might have been, or could have been raised in the condemnation proceedings are adjudicated and forever foreclosed by that judgment." This may be admitted, but it does not answer the question whether a loss that neither party had any reason to anticipate and the possibility of which, if suggested, would have been rejected as speculative and conjectural by the trial court can now be compensated in damages. In the case brought by the *Olympia Light & Power Co. v. Harris*, 58 Wash. 410, 108 Pac. 940, the claimant undertook to show that a ridge which the company purposed to use as a retaining wall for the waters of a lake when raised to a higher level would not successfully retain the waters, but would permit of leakage or seepage. We said:

"As to whether it will or not is now conjectural, and must be until it is put to the desired use. If it then should be ascertained that it is ineffectual, respondents have their remedy in an action where the damage can be readily and easily determined from the physical facts then existing, and not as a matter of speculation and conjecture as it must now be."

In the Dexter avenue condemnation, the city proceeded regularly. It condemned the right to raise the grade and to make a slope on plaintiffs' property of one and one-half to one. It fixed this ratio because from experience it had found it to be sufficient. On the other hand, plaintiffs graded that part of their lot abutting on Westlake avenue to conform to the established grade. This was a lawful thing to do, a necessary thing to do if the property was to be made available, and a thing to be anticipated in the natural order of events. The thing that was not anticipated was the sinking of the fill in the street, which had to be backfilled for a long time, and which not only added to the weight of the fill as called for in the plan, but also pushed the slope further

down on plaintiffs' property, and from some cause, or combination of causes, made the earth on the graded part of the lot buckle up. An engineering problem is presented. Manifestly a property owner should not be held to the doctrine of *res judicata* when he has failed to set up as an item of damages something that was not foreseen by the engineers who drew the plans for the improvement of Dexter avenue, or those who had charge of the work.

We find no hesitation in applying the doctrine of *Casassa v. Seattle*, 66 Wash. 146, 119 Pac. 13, to the facts in this case. There the city assumed that a one to one slope would be sufficient. The property owner moved his house back beyond the slope: "When the contractors for the city proceeded with the work of excavation, the slope was not sufficient to hold the soil, which on account of its character slid into the cut, and carried with it the houses, which were completely demolished." A recovery was had, although it was argued, and with much force, that a plan for a one to one bank, taking into consideration the "character of the soil and it disposition to slide," was patently deficient, and the consequent damages must have been considered by the jury. A condemnation must proceed along the lines marked out by the condemner; the property owner cannot anticipate, and will not be heard to speculate, upon possible consequences. They must be reasonably probable. *Olympia Light & Power Co. v. Harris, supra.* Having in mind these principles, we held that, where the "character of the soil" was such as to defeat the estimates and the opinions of the engineers, more land was occupied than was contemplated and that additional damages could be recovered. The damage sustained by plaintiffs may be justly attributed to a physical condition, the character of the underlying soil. The case of *Provine v. Seattle*, 59 Wash. 681, 110 Pac. 619, is also relied on. In that case the trespass was wilful and the verdict could have been sustained in any event; it may, however, be considered

as authority to sustain the holding that a city cannot take more than it has paid for.

The Pennsylvania Railroad Company "by authority of law," which we may assume for the purposes of this case is the power of eminent domain, proceeded to construct a connecting line over an embankment between two points on its main track for the purpose of avoiding a dangerous and expensive curve. The company put into the embankment or fill about 160,000 cubic yards of earth and other filling, when the surface of property owned by an abutting owner irregularly upheaved so that his building was almost completely wrecked and was deserted by his tenants. It was the theory of the complainant that the upheaval was due to the deposit of filling material upon soft ground; that the silt and mud were thereby forced back upon adjacent property, "or that the filling material itself moves upon and through the mud, under the surface of his lot and up through that surface, and he insists that from one or the other or both of these causes the surface of the lot has been and is being disturbed." The right to recover damages in such a case is admitted. *Herbert v. Pennsylvania R. Co.*, 43 N. J. Eq. 21, 10 Atl. 872. The same railroad company "filled in upon its lands a quantity of earth and raised an embankment of great height, and thereby forced and pressed a large quantity of earth into and upon the lots of another beneath the surface of the same, and thereby upheaved the surface and caused the foundation and walls of the dwelling house thereupon to crack and topple over." Upon this statement of facts it was held that the complainant had a cause of action. *Costigan v. Pennsylvania R. Co.*, 54 N. J. L. 233, 23 Atl. 810.

In *Roushlange v. Chicago & A. R. Co.*, 115 Ind. 106, 17 N. E. 198, a railway company had received a deed and paid a consideration for land upon which to construct and operate its road. The complaint alleged:

"That a portion of the land over which the railroad was constructed was marshy; that through that portion the railway company made an embankment about twelve feet high; that, after the road had been used for about six months, the embankment . . . began to sink; that, to keep the grade up to the original height, the railway company deposited upon the top of the embankment a large amount of earth, sand and other material; that, as the same was thus deposited, the embankment kept sinking until the road-bed finally became settled and solid; that a large amount of the earth and other material thus deposited, as it sank, spread and extended under the surface of the land beyond the land of the railway company and upheaved the plaintiff's land adjoining the right of way and rendered worthless several acres of it."

We understand the law of eminent domain to be the same whether it is invoked by a city or by a public service corporation, and this case is strangely like the one at bar. There the rule is laid down, as it has been often declared in this state, that in considering the damages to be assessed, the value of the land appropriated should be considered, together with any injury to the residue of the land naturally resulting or that might reasonably be expected to result from the appropriation and construction of the road in a proper manner. In passing upon the main question the court said:

"The real question in the case before us is not one of negligence, but of an encroachment upon land outside of the company's right of way. When the company discovered that its road-bed was sinking, could it, without making compensation, or the payment of damages, have gone upon appellant's land and constructed walls or banks to prevent the road-bed from sinking and spreading? Certainly not. That it did not do, but, what in effect was the same thing, it filled in earth and other materials until the embankment spread out beyond the right of way upon appellant's adjoining lands, and upheaved the surface and caused the injury described in the complaint.

"It may be that the company had no knowledge that the filling would cause the spreading of the embankment and the upheaval of appellant's land. Whether or not it had such

knowledge is not stated in the complaint; nor do we think that it is material in this case. By reason of the filling upon the embankment it was caused to spread upon appellant's land and caused the injury. That the railway company may have had no knowledge that the filling would cause the injury is not sufficient to exonerate it from liability.

"The fact remains that appellant granted to the railway company a strip of land upon which to construct and operate its road, and it has so constructed it as to make it rest, not only upon the strip thus granted, but also upon his adjoining land, not granted. The railway company is thus occupying land which was not granted to it, and which neither party intended should be either granted to it or occupied by its road.

"The road is no less an encroachment upon appellant's land because its foundation is beneath the surface. That fact might affect the amount of damages, but it does not alter the rights of the parties. The railway company had a right to construct its road upon the strip of land granted, but it has no right to occupy additional land without compensation or the payment of damages. The strip of land was granted before the road was constructed, and hence, the consideration paid must be presumed to have been measured by the value of the land granted and the anticipated damages, in the light of surrounding circumstances and the knowledge of the parties at that time. It surely was not intended at that time that the road-bed should cover and rest upon land outside of the strip granted. Nor could it have been anticipated that in the construction of the road land outside of the right of way would be occupied by the road-bed or any portion of it. It would not be reasonable, therefore, to assume that in fixing the compensation the parties included damages for such encroachment.

"Had the strip of land been taken by condemnation instead of by grant, the commissioners or jury in assessing the damages could not have included damages from such encroachment: First, because they could not have assumed that the railway company would voluntarily so construct its road as to make it rest partially upon land outside of the right of way. To have assumed that, and to have assessed damages accordingly, would have been to assume that the railway company would commit a trespass, and to have assessed, in

advance, damages resulting from such trespass. Second, because they could not have known in advance that the result of the fill would be to cause the embankment to so spread as to encroach upon appellant's land and cause injury. Such an injury could not reasonably have been expected to result from the proper construction of the road.

"It will not be presumed that the parties included in the price agreed upon at the time of and for the grant any amount for injuries which would not properly have been considered by the commissioners and jury, had the right of way been taken by condemnation proceedings."

To further sustain its position that the damages now claimed cannot be recovered in another suit, the city cites and relies upon the following cases: *Compton v. Seattle,* 38 Wash. 514, 80 Pac. 575; *Johnson v. Spokane,* 72 Wash. 298, 130 Pac. 341; *Carpenter-McNeil Inv. Co. v. Spokane,* 73 Wash. 232, 131 Pac. 823; and for the sake of future reference, the case of *Grosshoff v. Spokane,* 73 Wash. 681, 132 Pac. 643, may be added. In the *Compton* case, the court held that the matters sought to be litigated in the principal case were actually litigated in the condemnation case. In the *Johnson* case, the item sought to be recovered was on account of the lowering of the surface of the street, and the court held, as it held in the *Grosshoff* case, that this was a question that was open to the plaintiff and might have been litigated in the condemnation suit. In the *Carpenter-McNeil* case, the work which it was alleged was negligently performed had been done at the time the condemnation suit was tried. It was accordingly held that the plaintiff could have set up in that suit all damages claimed by him, not only on account of the physical change of the grade, but all that had resulted from the manner in which the work was done. The corner stone of that case was the statute, Rem. & Bal. Code, § 7820 (P. C. 171 § 135). We find nothing in these cases that would defeat the right of these plaintiffs to recover.

There are other assignments of error predicated upon the instructions. The pleadings were drawn upon the theory

of negligence, and the plea of contributory negligence was tendered as a defense.   Upon the oral argument it seemed to be conceded by all parties that this is not a case of negligence.   If it were so, we would hold that the plaintiffs were not guilty of contributory negligence in excavating that part of their lot abutting on Westlake avenue.

We have not overlooked the contention of the city that, if the lot had been left in its natural condition and unexcavated, there would have been no disturbance. This is not sound. City property located upon the slope of a hill must ordinarily be put to some use, and if necessary must be cut or filled.   As hereinbefore suggested, the owner cannot be held negligent or his recovery defeated if he pursues his lawful right; otherwise the law would demand that all property taken or damaged for a public use be bought outright.

The case was not tried upon a correct theory of the law, but we are satisfied that plaintiffs are entitled to a judgment against the defendant, and the amount of the verdict not being seriously challenged, we will not discuss the questions raised on the instructions.

Affirmed.

CROW, C. J., GOSE, MOUNT, and PARKER, JJ., concur.