FULLER et al. v. CITY OF CHATTANOOGA.—118 S. W. (2d) 887.

Eastern Section.   February 19, 1938.

Petition for Certiorari denied by Supreme Court, May 27, 1938.

Cantrell, Meacham & Moon, of Chattanooga, for plaintiffs in error.

J. W. Anderson, of Chattanooga, for defendant in error.

McAMIS, J.  Plaintiffs below, Clara Belle Fuller and Ethel C. Fuller, instituted this action in the Circuit Court of Hamilton County to recover the sum of $20,000 from the City of Chattanooga, representing damages alleged in the declaration to have resulted to plaintiffs' property as the result of a change of the grade of Market Street and the construction of an approach to Market Street from Sixteenth Street above the established grade of Sixteenth Street in front of their property. The defendant filed a plea of the general issue and also a special plea setting up as a bar to plaintiffs' cause of action a written agreement dated November 25, 1929, by the terms of which plaintiffs agreed to convey to the defendant City a strip of land forty-five feet in width to be used in widening Market Street in consideration of $9460.50, the same being in full payment and compromise of plaintiffs' claim for the taking of said strip.

Plaintiffs thereafter filed a replication to defendant's special plea, asserting that the written agreement and settlement set forth in said special plea was in settlement of a controversy arising out of the taking of said strip of land forty-five feet in width and did not contemplate or involve the changing of the grade of said street but only contemplated that it should be widened.

To the plaintiffs' replication, defendant filed a rejoinder, asserting that in order to make said property usable for the purposes for which it was purchased from plaintiffs it was necessary to construct a fill in front of plaintiffs' property and that such a fill would have to be constructed was contemplated both by the plaintiffs and by defendant in said compromise and settlement.  Plaintiffs joined issue on defendant's rejoinder to their replication.

Upon the issues joined by the foregoing pleadings the case proceeded to trial before the court and a jury and at the close of all the evidence the court sustained the defendant's motion for a directed verdict in its favor, the court being of opinion that the undisputed evidence, and particularly the written agreement between the parties and the circumstances under which plaintiffs conveyed to the defendant, showed that a change in grade was contemplated and expected.  From this action of the court plaintiffs have appealed in error to this court.

Prior to the year 1929 plaintiffs were the owners of a lot located at the corner of Carr and Sixteenth Streets.  The lot, improved with a one story brick business building, extended along Sixteenth Street a distance of one hundred and eighty-three feet and along Carr Street to a depth of one hundred and thirty-five feet.  It

appears that there were three entrances on Sixteenth Street which were principally used and photographs appearing in the record indicate that the building fronted on Sixteenth Street but there was also an entrance on Carr Street which is referred to in the record both as a street and as an alley.

Prior to the year 1929 Market Street terminated at Main Street, one block north of plaintiffs' property. In the year 1927 the City obtained an enabling act, Chapter 457 of the Private Acts of 1927, authorizing the City of Chattanooga to extend, widen and improve streets and assess the cost thereof against property to be benefited by the improvements. This bill was known as the Metropolitan Improvement District Bill.

Following the passage of this Act plaintiffs, acting through their agent Mr. M. Z. L. Fuller, along with other property owners in the same vicinity, began to petition the Board of Commissioners of the City of Chattanooga urging the creation of an improvement district for the purpose of extending Market Street southwardly over Carr Street from Main Street to Twenty-Eighth Street. It appears that M. Z. L. Fuller was very active in this movement and appeared before the Board many times urging that action be taken upon the proposed improvement.

Finally, on April 11, 1928, the Board of Commissioners passed a resolution creating improvement district number three for the purpose of "opening, extending, paving, and otherwise improving Market Street from Main Street southwardly to Twenty-Third Street." This project proceeded to the point of having engineers survey and lay out the proposed extension of Market Street along and over Carr Street, including a survey made for the purpose of determining the size and extent of fills which would be needed along the proposed extension, all of which, according to the proof, was low ground, subject to being flooded by the Tennessee river at high tide. After this work had been done it was discovered that on account of the low assessed valuation of the property abutting on the extended portion of Market Street it would be impossible to secure a sufficient amount of money to complete the project.

Improvement district number three was, by resolution of the Board of Commissioners, accordingly abandoned.

On the same day, or shortly thereafter, a resolution was introduced and passed creating improvement district number four. This resolution provided only for opening, widening and extending Market Street without making any specific provision for grading or paving.

Under this resolution a jury of view was appointed to assess the value of the forty-five foot strip on the Carr Street side of plaintiffs' property necessary for the widening of Market Street as extended over Carr Street. The jury of view assessed the value of

the land at $5642.50 and assessed the benefits to the remainder of the property at $6450. From this finding plaintiffs filed a petition for certiorari and supersedeas in the Circuit Court of Hamilton County for a review of the matters in controversy. Thereafter, this petition was dismissed upon the basis of a compromise agreement, mentioned in defendant's special plea to the declaration, by the terms of which agreement the assessment, as fixed by the jury of view, was to remain a valid and legal assessment against the property, and the City was to pay plaintiffs the sum of $9460.50, for land taken. This agreement bears date of November 25, 1929.

On February 18, 1930, the Board of Commissioners upon its own motion passed a resolution creating paving district number 534 and began to grade Market Street from Main Street southwardly to Twenty-Eighth Street.

We think the record supports the action of the circuit judge in directing a verdict in favor of defendant at the close of plaintiffs' evidence, though we do not base our holding entirely upon the written compromise agreement and contemporaneous conveyance of the forty-five foot strip to defendant. In addition to the implication that where land is condemned for a public use or is conveyed by the landowner for that purpose the landowner has been allowed damages or compensation for incidental damages resulting from changes in the grade necessarily made for the purpose of making the property usable, the evidence in this case affirmatively shows that M. Z. L. Fuller was present when the City Engineer made a survey of the proposed extension and knew that a grade of forty-five feet elevation above river level was contemplated. As finally completed the elevation at plaintiffs' property was within less than one-half foot of the forty-five foot elevation fixed by the city authorities under improvement district number three.

Upon this point we quote from Mr. Fuller's testimony as follows:

"X-16. That was done about 1928. Now, the street as contemplated in improvement district number three, and as put through was to be on a minimum grade of forty-two feet, that is, on an elevation of forty-two feet?

"A. The figure picked out at that time by Commissioner Crox was a forty-five foot grade.

"X-17. That is not the forty-five foot grade?

"A. They took that they were fixing on that.

"X-18. You knew that was discussed, and you appeared before the Board on numerous occasions urging them to start that improvement.

"A. Number three?

"X-19. Yes.

"A. Yes, because it called for a completed street on into Alton Park.

"X-27. You thought a forty-five foot elevation?

"A. That is what it was taking to get above possible high waters, to get above the flood area.

"X-28. Mr. Hook (City Engineer) determined on a minimum of forty-two feet?

"A. Mr. Hook said forty-five feet would not get above flood danger."

It would appear from the foregoing testimony that Mr. Fuller was anxious to have the street constructed under improvement district number three knowing that a forty-five foot fill would be made under that plan in front of plaintiffs' property but that he opposed the construction of the street under improvement district number four. He says he opposed improvement district number four for the reason that it did not contemplate a completed street as did improvement district number three but the important point, in the determination of the question now before the court, is that Mr. Fuller knew that the City Commissioner, Mr. Crox, and the City Engineer both deemed a fill raising the level to a forty-five foot elevation necessary before a street could be built above flood level.

Not only does it appear that a forty-five foot elevation was contemplated as a necessity in the construction of the street under improvement district number three and that Mr. Fuller was aware of the opinion of the City Commissioner and City Engineer that a fill to that elevation would be necessary, but it appears from the testimony of engineers introduced as witnesses for plaintiffs that the opinion expressed by the representatives of the City was correct as a matter of engineering. According to the undisputed evidence the elevation of Market Street at the Main Street intersection, prior to the fill, was approximately six feet above the elevation of plaintiffs' lot and, in order to avoid an excessive grade south of Main Street, it was necessary to raise Market Street as extended in front of plaintiffs' property. This was in addition to the necessity of elevating the street above flood level. Mr. Fuller was advised of the latter necessity by the city authorities and, being familiar with conditions in the vicinity, there can be little doubt that he anticipated the necessity of elevating Market Street as extended in order to make a satisfactory approach to Market Street as already constructed.

As has already been seen Mr. Fuller admits that if Market Street had been extended and improved under the plan proposed for improvement district number three he would have had reason to expect the erection of a fill in front of plaintiffs' property of forty-five feet elevation but counsel for plaintiffs insist that this project was abandoned and that, therefore, the elevation proposed under that plan, although brought to the attention of Mr. Fuller acting

for plaintiffs, is no evidence that the street, when constructed under improvement district number four which, in terms provided only for widening and clearing the right of way along the proposed extension, would conform to that proposed or deemed necessary under improvement district number three. We are unable to accede to this contention. The street to be improved was identical under both plans, the only difference being that under improvement district number four no provision was made for grading or paving. However, the previous effort of the City to widen, grade and pave Market Street extension, abandoned only because of the low assessed valuation of abutting property, and every other circumstance indicated that improvement district number four was but preliminary to a general plan to complete the improvement of the street.

The City, according to Mr. Fuller's testimony, had expended the sum of $216,000 raised by the issuance of bonds in providing a right of way for the proposed street. It was not to be expected that the City would expend such a large sum for a street only to have it rendered impassable by floods during a good part of the time.

Notwithstanding the abandonment of improvement district number three because it developed that the proposed plan was not financially feasible, there was no abandonment of the position of the City Engineer that, when and if constructed, a satisfactory grade for the street under prevailing conditions could not be obtained without making a fill in front of plaintiffs' property. Although the plan of development changed, physical conditions did not change and we think no reasonable mind could reach any other conclusion except that plaintiffs knew that improvement district number four was but a step in a general preconceived plan to elevate and improve the extension of Market Street through this section of the City.

The proof shows that after the construction of the fill on Market Street it was necessary to construct a ramp or approach to Market Street for Sixteenth Street and that one of the three entrances of plaintiffs' property on Sixteenth Street was destroyed by a fill one and one-half feet in height at this point. It is claimed that plaintiffs' damages for this obstruction amount to $5,000.00 and that the court, in any event, should have submitted to the jury the question of liability of the City for thus changing the grade of Sixteenth Street. We think plaintiffs should and must have anticipated that when Market Street should be brought to an elevation of forty-five feet, raising it three feet above Sixteenth Street, it would be necessary to make an approach by raising Sixteenth Street at the Market Street end of their property. We think this necessity

must have been contemplated by plaintiffs when they were paid for the forty-five foot strip necessary in widening Market Street.

■ We think the facts of this case bring it within the well established rule in such cases that the condemnation of a right of way or a deed conveying a right of way cover by implication whatever is necessary to make the enjoyment of the land coveyed effectual for the particular purpose for which it is acquired by the condemnor or conveyee as the case may be. The principles underlying this rule have been applied in several cases in this State.

In Hord v. Railroad, 122 Tenn. 399, 123 S. W. 637, 135 Am. St. Rep. 878, 19 Am. Cas. 331, the court held that (page 408): "An agreement between a landowner and a railroad company to sell the latter a right of way across the tract of the former covers all damages, of whatever sort, to that tract, to which the landowner would have been entitled in a regular condemnation proceeding. He is presumed to have contemplated and arranged for all such damages in fixing the consideration for the contract, and he is therefore remitted to it. . . . Of course, the effect of a deed is the same (2 Lewis on Em. Dom., sections 293, 568), and the deed covers by implication whatever is necessary to make the enjoyment of the land conveyed effectual, and, where it is conveyed for a particular purpose, then effectual for that purpose . . ."

In that case the court held the railroad company not liable to the landowner for damages resulting from rocks being cast upon the adjoining property in blasting the roadbed to the desired level.

To the same effect is Newberry v. Hamblen County, 157 Tenn. 491, 9 S. W. (2d) 700.

■ The latest pronouncement of the Supreme Court on this subject is contained in the opinion in Central Realty Company v. City of Chattanooga, 169 Tenn. 525, 531, 89 S. W. (2d) 346, 348, where the court said:

"Another well-recognized principle of law is applicable. That is, that in condemnation suits, all injuries necessarily incident to the proposed public improvement must be presumed to have been included and compensated for in the award of damages to the landowner. Newberry v. Hamblen County, 157 Tenn. 491, 9 S. W. (2d) 700. So in the case at bar, when plaintiff deeded to defendant an easement for the construction of a street 80 feet in width, with knowledge that it was necessary to make fills in the construction of the street upon a grade of an elevation of 42 feet, we think plaintiff must necessarily have contemplated that such fills would require a base more than 80 feet in width, and the right of way to build them of proper width, as determined upon by the city, as necessary for the support of an 80-foot street, must be regarded as having been within the contemplation of the parties."

■ From the foregoing cases, as well as cases from other jurisdictions which we have examined, it appears to be well settled that parties and their privies are concluded as to all matters which were put in issue, or might have been put in issue, in a condemnation proceedings (see cases cited supra and Ohio & Mississippi Railway Co. v. Wachter, 123 Ill. 440, 15 N. E. 279, 5 Am. St. Rep. 532; Gainesville, H. & W. Railway Co. v. Hall, 78 Tex. 169, 14 S. W. 259, 9 L. R. A. 298, 22 Am. St. Rep. 42; Denver City Irrigation & Water Co. v. Middaugh, 12 Colo. 434, 21 P. 565, 13 Am. St. Rep. 234), although it is held that a loss or damage that neither party had any reason to anticipate, and the possibility of which, if suggested, would have been rejected as speculative and conjectural in the condemnation proceedings, may be compensated for in a subsequent action. Hinckley et al. v. City of Seattle, 74 Wash. 101, 132 P. 855, 46 L. R. A. (N. S.), 727, Ann. Cas. 1915A, 580; and cases therein cited.

■ In this case in the proceeding instituted against the City to recover the value of the forty-five foot strip, in view of the necessity of raising the street to get it above flood level and continue the grade of Market Street as already established at the intersection of Main Street and the apparent intention of the City to make Market Street extension an improved thoroughfare, it could not have been successfully asserted that a claim for damages to the remainder of plaintiffs' property was speculative and conjectural and, in the compromise of that proceeding, it is to be presumed that the parties contracted with these known conditions in mind.

We find nothing in McDonald v. Scott County et al., 169 Tenn. 374, 87 S. W. (2d) 1019, opposed to the above holding. The court merely held in that case that where the condemnor represented that there would be no change of grade and later, contrary to these representations, the grade was changed the condemnor would be liable for damages sustained by the landowner from raising the grade in front of his property. There was no such representation in this case but, on the contrary, every circumstance indicated that it would be necessary to change the grade in front of plaintiffs' property.

■ Finally, it is insisted that under Code, Section 3404 (1932) plaintiffs are entitled to recover notwithstanding the condemnation proceeding and subsequent compromise. The statute merely provides that the landowner shall be paid all damages sustained by reason of any change made in the natural or established grade of any highway, street or alley. The cases we have cited all proceed upon the theory that damages have already been paid where the condemnation proceeding might have included an issue of prospective damages or where the parties contract under such circumstances as to imply that such damages were within the contemplation

of the parties. The statute is not to be construed as giving the landowner the right to recover twice for the same damages.

For the reasons indicated we think there was no error in directing a verdict in favor of the defendant at the conclusion of plaintiffs' evidence. It results that all of the assignments of error are overruled and the judgment below affirmed.

Portrum and Ailor, JJ., concur.