## JONES v. OMAN et al.—184 S. W. (2d) 568.

Middle Section. July 22, 1944.

Petition for Certiorari denied by Supreme Court, December 8, 1944.

(1)

William Sugg, Tyree B. Harris, III, and Walker & Hooker, all of Nashville, for plaintiff in error.

Andrew Ewing, of Nashville, for defendants in error.

HICKERSON, J.  M. M. Jones conveyed to Cumberland Electric Membership Corporation a right-of-way easement across his farm of one hundred acres located in Sumner County, Tennessee, whereby he granted unto this corporation the right to enter upon his land, ''and to place, construct, operate, repair, maintain, relocate and replace thereon and in or upon all streets, roads or highways abutting said lands an electric transmission or distribution line or system, and to cut and trim trees and shrubbery to the extent necessary to keep them clear of said electric line or system and to cut down from time to time all dead, weak, leaning or dangerous trees that are tall enough to strike the wires in falling.''

Oman Construction Company did the construction work incident to the building of this electric light line for Cumberland Electric Membership Corporation.  In the course of the construction it was necessary to blast holes in which to put the light poles.  Plaintiff filed this suit against Oman Construction Company alleging that in blasting these holes defendant destroyed a well which was located on plaintiff's land near his home.  Defendant pleaded the general issue, and the case was tried before the judge and a jury.  At the conclusion of plaintiff's proof the judge sustained defendant's motion for directed verdict, entered judgment thereon and dismissed plaintiff's suit.

Plaintiff has assigned one error in this Court: ''The court erred in directing the jury to return a verdict in favor of the defendants at the conclusion of the plaintiff's proof.''  (In this opinion we are referring to the defendants as Oman Construction Company, in the singular.)

There are two controlling questions before us: First, did plaintiff introduce material evidence from which a jury could have found that the blasting oper-

ations did the damage to plaintiff's well? If so, that question should have been submitted to the jury. Second, was the injury to plaintiff's well covered by and included in the right-of-way easement contract between plaintiff and Cumberland Electric Membership Corporation?

Evidence was introduced which tended to show: defendant located four light poles near plaintiff's home, two on plaintiff's land, one in the road near plaintiff's land, and one on the land of Mrs. Pauline Light, plaintiff's sister. One pole was about one hundred to one hundred fifty feet from plaintiff's well. The holes were about twelve inches in diameter and eight or ten feet deep through solid rock. The holes were dug by blasting on July 17, 1939.

Plaintiff owned an excellent well near his home which was about sixty feet deep. The water in the well was thirty to forty feet deep. The well had been there for forty or fifty years and had always furnished an abundant supply of water for two or three families and the livestock on the farm. Mrs. Pauline Light had a well on her farm close by, across the road from plaintiff's farm, and this well had furnished plenty of water since it was dug. Water was in these two wells on the morning of the day that these holes for the light poles were blasted. That afternoon, after the blasting, both wells were dry. Plaintiff used a long well bucket, commonly used in bored wells, with a plunger on the bottom of it. When he tried to let this bucket down in the well, after the blasting was done, he found that there was an obstruction in the well which prevented the bucket from going on down. The obstruction was about twenty to twenty-five feet from the top of the ground at the place where the stream ran into the well, and was caused by rock jutting out into the well. Pieces of the rock were broken off so the bucket would go to the bottom of the well. When asked about the

nature of the water in the well after the blasting, plaintiff said that: "It was really mud, you could smell powder in it and a few days after when it cleared up it tasted powder for several days."

Plaintiff continued to live on this farm for about two years and a half after that time, and the water never did come back, and the little that did come back was not fit for human consumption during that time.

On the same day that the blasting was done and plaintiff's well went dry his sister's well across the road also went completely dry. Plaintiff testified that he was a "water witch", and that his father before him was a "water witch." Neighbors corroborated his statements in regard to his ability to locate streams of water by "switching." He stated that the stream of water which went to his sister's well and the stream of water which came to his well were forks of the same stream; that one of the light poles was located near the place where this stream forked with one branch of it going to his sister's well and the other branch coming to his well. He also testified as to the damage which he sustained by the loss of his well. Under all the facts and circumstances shown, we are definitely of the opinion that there was evidence which should have been submitted to the jury on the question that the blasting operations caused plaintiff's well to go dry.

In Hines v. Partridge, 144 Tenn. 219, 232, 233, 231 S. W. 16, 19, the Court said:

"There can be no constitutional exercise of the power to direct a verdict in any case where there is a dispute as to any material evidence, or any legal doubt as to the conclusion to be drawn from the whole evidence upon the issues to be tried, but the case must go to the jury.

Tennessee Central R. R. Co. v. Morgan, 132 Tenn. 1, 175 S. W. 1148; Norman v. Southern R. Co., 119 Tenn. 401, 404 S. W. 1088; Kinney v. Yazoo & M. V. R. R. Co., 116 Tenn. 450, 92 S. W. 1116.

"In considering defendant's motion for a directed verdict, that view of the evidence most favorable to the plaintiff's case must be taken by the court, and, if there is any doubt as to the conclusion to be drawn from the whole evidence, the motion must be denied. Nashville v. Reese, 138 Tenn. 471, 197 S. W. 492, L. R. A. 1918B, 349."

■ The right-of-way easement which plaintiff executed to Cumberland Electric Membership Corporation covered all damages to plaintiff's land which plaintiff could have recovered had such land been taken in a regular condemnation proceeding. The consideration for the contract is presumed to have covered all such damages and plaintiff is bound thereby. Hord v. Holston River R. Co., 122 Tenn. 399, 123 S. W. 637, 135 Am. St. Rep. 878, 19 Ann. Cas. 331; Knott v. Louisville & Nashville R. R. Company, 144 Tenn. 676, 234 S. W. 1003, 19 A. L. R. 482; Lebanon v. Dillard, 155 Tenn. 448, 295 S. W. 60; Newberry v. Hamblen County, 157 Tenn. 491, 9 S. W. (2d) 700; Central Realty Company v. City of Chattanooga, 169 Tenn. 525, 89 S. W. (2d) 346; Fuller v. City of Chattanooga, 22 Tenn. App. 110, 118 S. W. (2d) 886, 887.

■ In this jurisdiction any person who carries on a blasting operation is held to the liability of an insurer, and he proceeds with such work at his own risk. Gossett v. Southern R. Company, 115 Tenn. 376, 89 S. W. 737, 1 L. R. A. (N. S.), 97, 112 Am. St. Rep. 846; Aycock v. Nashville, Chattanooga & St. Louis Railway Company, 4 Tenn. App. 655; Pate v. Lewisburg & Northern Railway Company, 8 Tenn. Civ. App. (8 Higgins), 335; City

of Knoxville v. Peebles, 19 Tenn. App. 340, 87 S. W. (2d) 1022.

■ If a landowner suffers damage as a result of the condemnation and use of his land, which neither he nor the condemnor contemplated at the time of the condemnation proceedings; and the damage is of such nature that the court would have rejected an attempt to prove the same in the condemnation proceedings as speculative and conjectural, the landowner may be compensated for such damage in a subsequent action. Fuller v. City of Chattanooga, supra; 29 C. J. S., Eminent Domain, sec. 328, p. 1372; 18 Am. Jur., 1011, Eminent Domain, sec. 369.

This court reviewed the cases, which state the general rule, and recognized the foregoing exception thereto in Fuller v. City of Chattanooga, supra, 22 Tenn. App. 110, at pages 116, 117, 118 S. W. (2d) 886 at page 890, where it was said:

"In Hord v. [Holston River] Railroad, 122 Tenn. 399 [at page 408] 123 S. W. 637 [at page 639], 135 Am. St. Rep. 878, 19 Ann. Cas. 331, the court held that: 'An agreement between a landowner and a railroad company to sell the latter a right of way across the tract of the former covers all damages, of whatever sort, to that tract, to which the landowner would have been entitled in a regular condemnation proceeding. He is presumed to have contemplated and arranged for all such damages in fix-the consideration for the contract, and he is therefore remitted to it. . . . Of course, the effect of a deed is the same (2 Lewis on Em. Dom., secs. 293, 568), and the deed covers by implication whatever is necessary to make the enjoyment of the land conveyed effectual, and, where it is conveyed for a particular purpose, then effectual for that purpose . . .'

"In that case the court held the railroad company not liable to the landowner for damages resulting from rocks being cast upon the adjoining property in blasting the roadbed to the desired level.

"To the same effect is Newberry v. Hamblen County, 157 Tenn. 491, 9 S. W. (2d) 700.

"The latest pronouncement of the Supreme Court on this subject is contained in the opinion in Central Realty Company v. City of Chattanooga, 169 Tenn. 525, 531, 89 S. W. (2d) 346, 348, where the court said:

"'Another well-recognized principle of law is applicable. That is, that in condemnation suits, all injuries necessarily incident to the proposed public improvement must be presumed to have been included and compensated for in the award of damages to the landowner. Newberry v. Hamblen County, 157 Tenn. 491, 9 S. W. (2d) 700. So in the case at bar, when plaintiff deeded to defendant an easement for the construction of a street 80 feet in width, with knowledge that it was necessary to make fills in the construction of the street upon a grade of an elevation of 42 feet, we think plaintiff must necessarily have contemplated that such fills would require a base more than 80 feet in width, and the right of way to build them of proper width, as determined upon by the city, as necessary for the support of an 80-foot street, *must be regarded as having been within the contemplation of the parties.'*

"From the foregoing cases, as well as cases from other jurisdictions which we have examined, it appears to be well settled that parties and their privies are concluded as to all matters which were put in issue, or might have been put in issue, in a condemnation proceedings (see cases cited supra and Ohio & Mississippi Railway Co.

v. Wachter, 123 Ill. 400, 15 N. E. 279, 5 Am. St. Rep. 532;
Gainesville, H. & W. Railway Co. v. Hall, 78 Tex. 169,
14 S. W. 259, 9 L. R. A. 298, 22 Am. St. Rep. 42; Denver
City Irrigation & Water Co. v. Middaugh, 12 Colo. 434,
21 P. 565, 13 Am. St. Rep. 234), although it is *held that a
loss or damage that neither party had any reason to
anticipate, and the possibility of which, if suggested,
would have been rejected as speculative and conjectural
in the condemnation proceedings, may be compensated
for in a subsequent action.* Hinckley et al. v. City of
Seattle, 74 Wash. 101, 132 P. 855, 46 L. R. A. (N. S.), 727,
Ann. Cas. 1915A, 580; and cases therein cited." (Italics
added.)

We think the application of this exception to the
general rule, where the facts justify its application, is
just as necessary to justice as the enforcement of the
general rule itself. In the instant case, if plaintiff had
offered proof as to the value of his well as an element
of damage in a condemnation suit, such evidence would
have been properly rejected by the trial court as too
speculative and remote. That being true, plaintiff is
entitled to recover for such damages in this subsequent
action.

The case should have gone to the jury, and the trial
court erred in directing a verdict for defendant.

There is no merit in the contention of defendant
thit it would not be liable in this case because it was doing
this construction work for Cumberland Electric Member-
ship Corporation. Our courts have held that the plaintiff
in such cases may recover a joint judgment against the
public service corporation and the contractor actually
doing the work for such corporation. Gossett v. Railroad,
supra; City of Knoxville v. Peebles, supra.

Let the assignment of error be sustained and the judgment of the trial court reversed. The costs of the appeal are adjudged against defendant. Remand the cause for a new trial on the merits.

Felts and Howell, JJ., concur.