### CHESAPEAKE & HOCKING RY CO v SNYDER

Ohio Appeals, 4th Dist, Ross Co

Decided Feb 2, 1931.

Wilson & Rector, Columbus, and Wilby G. Hyde, Chillicothe, for Ry Co.

J. D. Withgott, Chillicothe, for Snyder.

MAUCK, J.

We may say, in the first place, that if the plaintiff has any cause of action the judgment is not excessive and would not be disturbed by us on that account.

There were three different grounds upon which the plaintiff claimed his right to recover. The first was that the land appropriated by the Baltimore and Ohio was abandoned by that company under the general appropriation statutes, and the second was that the appropriated land had never been improved for railroad purposes by the expenditure of any sum of money thereon, or its use in any way, and that the appropriating company had forfeited it for non-user under the provisions of **9059 GC**. The trial court held against the plaintiff on both these grounds and it becomes unnecessary for us to review them. We are content to say that we think the trial court was right. There can be no abandonment unaccompanied by an intention to abandon, and no forfeiture can be declared under **9059 GC** for that section relates only to a right of way occupied by an unfinished road. There was no unfinished road on the right of way in question, and the statute being one for forfeiture must be strictly construed. It is consequently of no avail to the plaintiff here.

This brings us to the remaining claim of the plaintiff that the method of construction employed by the Chesapeake and Hocking in laying a double track railroad line across this property at an elevation of seventeen feet, when the appropriation made by the Baltimore and Ohio was for a single track branch railroad through a cut, constituted an additional damage to the plaintiff's property for which he was not compensated in the appropriation proceedings. The trial court held this claim sufficient in law and it was upon this issue that recovery was had.

The best expression of the view upon which the plaintiff's claim rests is a single sentence taken from **Freeman on Judgments, Section 623**, where the author was discussing damages arising in eminent domain proceedings:

"The judgment is no bar to the recovery of damages which neither party had any reason to anticipate and the possibility of which, if suggested in the condemnation proceeding, would have been rejected as too speculative and conjectural for allowance or consideration."

The author supports this sentence with no citations but illustrates its application by the sentence following:

"Thus where the filling and raising of a street by means of a sloping embankment on the adjoining property, by reason of the sinking of the fill, causes the adjoining ground to buckle and injure a building thereon the damage so caused, not having been reasonably foreseeable, may be subsequently recovered."

This illustration he supports by citing **Hinckley v. City of Seattle, 74 Wash. 101; Ann. Cas. 1915A, 580; 46 L. R. A. (n. s.) 727; 132 Pac. 855.**

Freeman, however, in the same section lays down the general rule as follows:

"When proceedings in the exercise of the right of eminent domain are prosecuted parties affected must then recover all damages present and prospective which are the natural and reasonable results of the improvement contemplated."

**Jones** in his **Commentaries on Evidence** follows **Freeman** in the general rule as follows:

"Likewise it is well settled in the law of eminent domain that the parties and their privies are concluded as to all matters which were put in issue, or might have been put in issue in comdemnation proceedings."

In a note thereto he adds:

"But a loss that neither party had any reason to anticipate and the possibility of which, if suggested, would have been rejected as speculative and conjectural in the condemnation proceedings, may be recovered in a subsequent action."

For this exception to the rule Jones, too, relies exclusively on **Hinckley v. Seattle.** Both Freeman and Jones owe both the thought and language referred to to the opinion in the Hinckley case, where the court said:

"Appellant invokes the rule that all matters that were, should have been, might have been, or could have been raised in the condemnation proceedings are adjudicated and forever foreclosed by that judgment. This may be admitted, but it does not answer the question whether a loss that neither party had any reason to anticipate, and the possibility of which, if suggested, would have been rejected as speculative and conjectural by the trial court, can now be compensated in damages."

In the Hinckley case damages had been assessed in a condemnation proceeding by a city where it was proposed to improve a street in accordance with certain plans and specifications. The right condemned was one to raise the grade of the street, to widen it seven feet and to make a slope of a prescribed declivity on the property of the plaintiff. Compensation was allowed for that. The property owners had adjusted the surface of their property to the conditions fixed by the condemnation proceedings. After the city had made a fill the street sank with the result that the lots of the property owners slipped away, and the

city had in fact taken from the property owners more than they had condemned. What, therefore, the court had in mind in using the language referred to was that in condemnation proceedings it could not have been contemplated that the taking of a limited portion of the owner's land would because of the structure of the property result in taking much more of the property than had been lawfully appropriated.

Both Freeman and Jones and all the authorities are therefore in harmony with the doctrine laid down in **Lewis on Eminent Domain, Section 713:**

"It is apparent that where part of a tract is taken the damages to the remainder can never be satisfactorily estimated without knowing how the works on the part to be taken are to be constructed. Take the case of a railroad through a piece of property. It may make a great difference whether it is built at the natural grade or in a deep cut, or on a high embankment or trestle. The question then is, Upon what basis is the tribunal to proceed when the manner of construction is not defined? In the case supposed the condemning party will acquire the right to construct its works in any way it pleases, which is not negligent or unlawful, and which does not violate the rights of adjacent land owners, and it will have the right to change the mode of construction at pleasure, subject to the same limitations. As the damages must be sustained once for all, and as the taker may obviate all difficulty by stipulating to construct the works in a specified way, it would seem just that damages should be assessed on the basis of the most injurious mode of construction that is reasonably possible."

The rule generally then being that the assessment of damages in a condemnation proceeding is based upon the supposition that the property will be used in the most damaging way possible under the law, it must be assumed in this case that the owner of the property was compensated by the judgment in the condemnation case for any damages flowing from the embankment that has been erected on the right of way unless there is something peculiar in the law of Ohio or something peculiar to this case, that takes the case out from this rule. The measure of damages to the residue in an appropriation case in this state is fixed by oath of the jury administered pursuant to **11053 GC.** It is there made the

duty of the jury to

"ascertain how much less valuable the remaining portion of such property will be in consequence of such appropriation".

The measure of the plaintiff's recovery was, therefore, the difference between the value of the residue of his farm before it was appropriated and the value immediately after the appropriation, and its value immediately after the appropriation had to be determined after the jury had taken into consideration the most damaging situation that might result from the lawful improvements to be constructed.

In **Grant v. Village of Hyde Park, 67 Oh St 166,** the Supreme Court expressly approved the doctrine now found in **Lewis on Eminent Domain, Section 819,** and the authorities supporting it, where this language is used:

"It is a doctrine often repeated in decisions that the damages must be assessed once for all, and that when once assessed according to law they include all the injuries resulting from the particular appropriation and from the construction and operation of the works in a reasonable and proper manner for all time to come."

The plaintiff in the case at bar undertook to show that there was evidence proceeding from some employe of the appropriating company that the right of way condemned would be improved by laying the tracks in a cut on the property, and it was this evidence that formed the groundwork for the verdict returned. This testimony was incompetent. In the Hyde Park case a village was appropriating property and a special interrogatory disclosed that there would be no damage to the residue of the property if the street should be improved on a grade of a certain character. The village proposed to show that the improvement would be of that particular character from which no damages could arise. The Supreme Court held that the appropriation actually made could not be modified by any attempt to bind the future action of the village authorities; that neither the resolution of appropriation nor the application for the assessment of damages contained any qualification of the right which the city might acquire, and that the character and extent of the appropriation was fixed by the appropriating resolution and the application in court to fix the compensation and damages.

On the authority of **Grant v. Village of Hyde Park** we are of the opinion that it would have been competent for the railroad company in condemning the plaintiff's property to have qualified its right to use the same by limiting such use to a cut, or improving at grade or other limited use, but it could not have limited the effect of the appropriation by any testimony that it offered. Even though testimony of the character referred to had been offered in the appropriation case we may assume that the jury was directed to disregard it, for we must assume that the jury considered all possible methods of construction unless the petition and the order granting the appropriation qualified the right condemned. The petition recited the character of the appropriation in this language:

"Plaintiff avers that in order to build and construct said branch line and sidetrack as aforesaid, it is necessary and its board of directors has so declared such necessity, that it appropriate to its use for railroad purposes the following described tracts of real estate".

The prayer of the petition was that such steps might be taken as would enable it

"to appropriate said parcels of real estate above described to its use for the purpose aforesaid upon the payment of full compensation to the defendants".

The order of the court determining the right of the railroad to appropriate was that the plaintiff had a legal right to make the appropriation and that said appropriation is necessary as prayed for. The final judgment in that proceeding was that the plaintiff was entitled to hold and use the property rights so appropriated for the uses and purposes for which the appropriation was sought.

There was consequently nothing in either the petition or the judgment of appropriation to qualify or limit the right of the appropriating company to use the property as it wished and might lawfully do for railroad purposes, and it was accordingly not competent to admit any testimony tending to show that the award made the property owner was predicated on some limited use to be made by the railroad company of its right of way.

It has been argued, however, that the petition of the Baltimore and Ohio shows that it was seeking to appropriate for a branch railroad and that the plat filed by it indicated that a single track would be laid on the right of way. There is nothing in the law that differentiates between a

branch and any other arm of the railroad so far as the number of tracks is concerned or their location on the right of way. One section of the statute grants the right to appropriate for a branch line. This statute was passed because under the general statutes theretofore existing the railroad corporation had power to condemn 'only between the fixed termini for which it was incorporated, and the section relating to branches merely authorizes the railroad corporation to extend its lines in branches or connections as might be necessary and to exercise the power of appropriation to that end. The appropriation for those purposes is as complete as it is where made for the construction of a main line.

It follows that there is nothing in the law of this state nor anything in the particular case that takes it out from the general rule that where property has been appropriated for railroad purposes and paid for that the company which acquires it has a right to use it in any way for those purposes that is not negligent, and that the compensation allowed by the jury has taken into consideration the probability of all such uses.

There is nothing to sustain the plaintiff's case. It can not be improved by any amendments made to the pleading nor by any aditional testimony. It is fatally defective. The motion of the defendant for a directed verdict should have been sustained.

The judgment is reversed and the petition of the plaintiff is dismissed.

Middleton, PJ, concurs.

Blosser, J, not sitting.