[Cite as *Westerville v. Taylor*, 2014-Ohio-3470.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| City of Westerville, | : | |
| Plaintiff-Appellant/ Cross-Appellee, | : | |
| | : | |
| v. | | No. 13AP-806 |
| | : | (C.P.C. No. 11CV-3819) |
| James R. Taylor, | | |
| | : | (REGULAR CALENDAR) |
| Defendant-Appellee/ Cross-Appellant, | : | |
| U.S. Bank National Association et al., | : | |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on August 12, 2014

*Porter Wright Morris & Arthur LLP*, **and** *Thomas A. Young*; *Anthony Heald*, **for appellant.**

*Vorys, Sater, Seymour & Pease*, **and** *Joseph R. Miller*, **for appellee James R. Taylor.**

*Michael DeWine*, **Attorney General**, *Michael L. Stokes* **and** *L. Martin Cordero*, **for Amicus Curiae.**

APPEAL from the Franklin County Court of Common Pleas

TYACK, J.

{¶ 1} Plaintiff-appellant, City of Westerville ("the City"), is appealing from an award given in an appropriation action.

{¶ 2} The appropriated land is for the stated purpose of improving the intersection of South State Street and Huber Village Boulevard in Westerville, Ohio. This is one part of a larger project to improve the South State Street corridor in Westerville.

Appellee, James Taylor, is the owner of a parcel of real estate located on the southwest corner of South State Street and Heatherdown Drive/Huber Village Boulevard in Westerville, Ohio. Huber Village Boulevard becomes Heatherdown Drive once it passes over South State Street going west. The parcel includes one commercial building, currently leased to U.S. Bank.

{¶ 3} In this case, the City appropriated two fee simple parcels from Taylor. The first is a .045 acre fee simple take that encompasses most of the property's State Street frontage. The second is a .o16 acre fee simple strip that runs across the majority of the property's Heatherdown Drive frontage, including the northern driveway that provides ingress and egress to Heatherdown Drive. The case was complicated by the fact that the City also sought and was awarded a .121 acre "landscape easement" to allow it to beautify the Heatherdown Drive portion of the intersection. The landscape easement also ran directly across the northern driveway on Heatherdown Drive. The evidence at trial showed that the majority of the Taylor property being appropriated was to be used for installing landscaping, ornamental fencing, a brick plaza, and other aesthetic features. The parties disputed whether the landscape easement improved or diminished the value of the residue.

{¶ 4} Before the taking, the property had two driveway connections to Heatherdown Drive. From what we can ascertain from the record, the driveway on the western side of the property where Heatherdown Drive curves south toward Pioneer Cemetery was not affected by the taking. The other main driveway in and out of the bank on the northern side has both the landscape easement and the fee simple take running across that driveway. The City's plans and specifications were to replace the northern driveway, and at the time of trial, the replacement driveway had been built. Throughout the project, access to Taylor's property via Heatherdown Drive was not denied. The banking public was able to get into and out of the bank.

{¶ 5} U.S. Bank chose to renew its lease for the property while this litigation was going on and planned to lease the property until February 28, 2018. The bank, although named as a party in the lawsuit, never entered an appearance and did not claim that the taking of a portion of the property, the establishment of a landscape easement, or reducing the access to the bank from the closing of one or both of the two driveways off

Heatherdown Drive, would have any impact either positive or negative on the bank branch on the property.

{¶ 6} A jury trial was conducted before a magistrate. The jury heard from both Taylor's appraiser and the City's appraiser. Both appraisers agreed that before the take, the property was valuable commercial property worth at least $1.9 million. They disagreed sharply as to the damage to the residue, with the City arguing at trial, as well as on appeal, that the damage to the residue was zero. The jury awarded $182,000 for the land actually taken and $1,135,735 for damage to the residue. Those awards were accepted by the magistrate and reduced to judgment by the judge assigned to the case.

{¶ 7} On appeal, the City assigns four errors for our consideration:

> [I.] Because the Appropriations did not interfere with Taylor's Northern Driveway access rights, the trial court erred in instructing the jury that a landowner is entitled to compensation for damages to the residue caused by an appropriation which interferes with the residue's access to and from a public street and in permitting the jury to award Taylor damages based on such an alleged interference.

> [II.] The trial court erred in instructing the jury that "[w]hen assessing the impact of the project on [Taylor's] property you must assume that the property will be used in the most damaging way possible as reasonably revealed from the evidence" and in refusing to give *Ohio Jury Instructions -- Civil* Section CV 609.09(6).

> [III.] Because the Appropriations were for street purposes, the trial court erred in instructing the jury that a landowner is entitled to compensation for damages to the residue caused by an appropriation which interferes with the landowner's right to an unobstructed view over a public street and in permitting the jury to award Taylor damages based on such an alleged interference.

> [IV.] The trial court erred in refusing to submit to the jury the jury interrogatories requested by Westerville.

{¶ 8} The landowner, Taylor, has filed a conditional cross-appeal and submits these "Conditional Cross-Assignments of Error." They are:

> [I.] The Trial Court Erred In Holding That Westerville's Appropriation Of Land For Aesthetics And "Branding" Is A Lawful Public Purpose Under R.C. 719.01.

[II.] The Trial Court Erred In Holding That Taylor's Property Was Necessary To Achieve A Valid Public Purpose Under [R.C.] 719.01.

[III.] The Trial Court Erred In Finding That Westerville Adequately Defined The Interests To Be Appropriated As Required By R.C. 719.04 And The Ohio Constitution.

{¶ 9} The State of Ohio and the Ohio Municipal League have filed amicus curiae briefs in support of the City. The National Federation of Independent Business Small Business Legal Center, Ohio Council of Retail Merchants, and the Ohio Association of Realtors have filed a joint amicus brief in support of Taylor.

{¶ 10} Turning to the assignments of error, the major issue is the damage to the residue and whether the magistrate properly instructed the jury on this issue. Our standard of review when it is claimed that improper jury instructions were given, is to consider the jury charge as a whole and determine whether the charge misled the jury in a manner affecting the complaining party's substantial rights. *Dublin v. Pewamo Ltd.*, 194 Ohio App.3d 57, 2011-Ohio-1758, ¶ 28 (10th Dist.), citing *Kokitka v. Ford Motor Co.*, 73 Ohio St.3d 89, 93 (1995). An inadequate instruction that misleads the jury constitutes reversible error. *Marshall v. Gibson*, 19 Ohio St.3d 10, 12 (1985).

{¶ 11} In addition, Civ.R. 51(A) provides:

On appeal, a party may not assign as error the giving or the failure to give any instruction unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection.

{¶ 12} It is well settled the "failure to timely advise a trial court of possible error, by objection or otherwise, results in a waiver of the issue for purposes of appeal." *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 121 (1997).

{¶ 13} In its first assignment of error, the City contends that the trial court erred by allowing the jury to consider loss of access to the northern driveway as part of the damages to the residue. The legal issue is whether Taylor still had a right of access to Heatherdown Drive after the City acquired the landscape easement and the fee simple strip of property along Heatherdown Drive. The City argues that because the resolution

appropriating the property in fee simple did not specify that it was taking all rights, title and interest in the property, Taylor retained his right of access to and from the property. The City further contends that, because the plans and specifications for the project indicate the northern driveway was to be preserved, albeit relocated slightly, the jury should not have been allowed to consider driveway access in determining damages to the residue.

{¶ 14} The relevant instructions at issue were given as follows:

> An owner of real property that abuts a public street or highway has a right to access that public street or roadway upon which his or her property abuts. In addition, an owner of real property that abuts a public street or highway has a right to an unobstructed view over the public highway or street. A property owner is entitled to compensation for any governmental action that substantially or reasonably interferes with that property owner's access to or visibility over the public street or roadway.
>
> When lands are taken in fee simple, without reserving rights to the landowner, the appropriating authority takes all rights and interest in the land, including right of access to abutting land.
>
> In addition to compensation for the property taken, the owner is entitled to any decrease in the fair market value of the residue of the property that is as a result of the appropriation. If the remaining land or residue is less valuable because of the appropriation, then you must consider such injury and determine the amount of such decrease in the fair market value because by the severance or separation of the land taken. This will be the amount awarded for damages to the residue.
>
> Damage to the residue resulting from the exercise of eminent domain may be recovered only for * * * damages not common to the public.
>
> Construction plans for the project have been placed in evidence and should be considered by you in assessing damages to the residue, if any. When assessing the impact of the projects on Defendant's property you must assume that the property will be used in the most damaging way possible as reasonably revealed from the evidence.
>
> * * *

Where lands are taken in fee simple, without reserving any rights to the landowner, the appropriating authority takes all rights and interest in the land, including the right of access to the abutting land.

{¶ 15} We turn to the leading case of *Masheter v. Diver,* 20 Ohio St.2d 74 (1969) to determine the issue. The syllabus in that case reads as follows:

1. A fee simple is the highest right, title and interest that one can have in land. It is the full and absolute estate in all that can be granted.

2. Generally, an owner of property abutting on a public highway possesses, as a matter of law, not only the right to the use of the highway in common with other members of the public, but also a private right or easement for the purpose of ingress and egress to and from his property, which latter right may not be taken, destroyed or substantially impaired without compensation therefor. (Paragraph one of the syllabus of State, ex rel. Merritt v. Linzell, 163 Ohio St. 97, 126 N.E.2d 53, approved and followed.)

3. Where the Director of Highways appropriates an easement in land for highway purposes under Section 5519.01, Revised Code, the right of access to the abutting property is not taken. (State, ex rel. Merritt v. Linzell, 163 Ohio St. 97, 126 N.E.2d 53.) However, where the Director of Highways appropriates lands for highway purposes under Sections 5519.01 and 5501.11, Revised Code, and the Resolution and Finding filed by the Director indicates that such lands are to be taken 'in fee simple' and designates the interests taken as 'all right, title and interest,' without reserving any rights *75 to the landowner, that appropriating authority takes all rights and interest in the land, including right of access to the abutting land.

{¶ 16} The case of *Wray v. Wymer*, 77 Ohio App.3d 122, 130-31 (4th Dist.1991), is also instructive on the issue of access:

In Ohio, the phrase "fee simple" has acquired a particular meaning as a result of case law. A fee simple is the highest right, title and interest that one can have in land; it is the full and absolute estate in all that can be granted. Conversely, an easement is an interest in the land of another which entitles the owner of the easement to a limited use of the land in

which the interest exists. Either an easement or a fee can be of unlimited duration. A fee simple title in appropriation cases is legally distinguishable from a perpetual easement because the former does not include a right of reversion for the landowner should the land be used for purposes for which it was not appropriated and also does not include any private right or easement for the purpose of ingress and egress to the abutting property owner's property.

(Citations omitted.)

{¶ 17} Here, because the taking was a fee simple take which crossed the northern driveway, the trial court interpreted *Masheter v. Diver* as mandating that Taylor be paid as if all northern driveway access to the bank was being blocked. A fee simple take gave the City complete ownership of a strip of land across the driveway. If the City chose to, it could erect a barrier across the driveway and essentially close the bank to banking customers. Simply put, Taylor no longer owns the northern driveway.

{¶ 18} The City, however, claims that the plans modified the rights taken in fee simple. This is simply incorrect. The intent of the City and even the actual use by the City are not what control the determination of damages. The fact remains that the City has acquired all rights and title to the property and remains free to use the property as it sees fit. Taylor presently may be assured of his right of access, but he has no guarantee that the City might change its plans in the future. Therefore, he must be compensated for all the rights taken.

{¶ 19} The City may not have intended to deny all access to the U.S. Bank branch on Taylor's property, but the fee simple property interest it received as a result of the appropriation action gives it the power to do just that. This leaves Taylor and the bank dependent on the good will of the City as to ingress and egress to the northern driveway.

{¶ 20} The City argues that the case of *Masheter v. Blaisdell*, 30 Ohio St.2d 8 (1972) implies that the *Masheter v. Diver* case is no longer good law. The syllabus for *Masheter v. Blaisdell* reads:

1. In a highway appropriation proceeding, where a perpetual easement for highway purposes is sought, the proper standard by which damages to the residue of the landowner's property are to be measured is one which limits allowable damages to those which are reasonably foreseeable.

> 2. Damages in a highway appropriation proceeding are limited to a consideration of the present intended use of the land taken by the Director of Highways for highway purposes, as revealed by the plans and specifications for the improvement, filed in the proceedings as required by statute, in the absence of evidence of other reasonably foreseeable damages.
>
> 3. In an appropriation proceeding wherein a perpetual easement is sought, a special instruction, which states that 'the damages to the remainder of the property are not necessarily to be determined solely on the basis of the present intended use of the land taken by the Director of Highways for highway purposes or the present proposed location of the pavement, roadway slopes, and ditches planned,' allows the jury to speculate upon mere possibilities, and constitutes prejudicial error.

{¶ 21} Relying on *Masheter v. Blaisdell*, the City contends that, because the plans and specifications for the project indicate that the northern driveway was to be preserved, albeit relocated slightly, the jury should not have been allowed to consider driveway access in determining damages to the residue.

{¶ 22} The problem with the City's argument is that the *Blaisdell* case addressed the State of Ohio seeking a perpetual easement across land, not complete ownership of the land. Had the City sought only an easement, *Blaisdell* might well apply. However, the City sought and got a fee simple interest in the land. The *Diver* case is still good law and applies to this controversy. By acquiring fee simple title to the property abutting Heatherdown Drive, Taylor lost the right to access the road through the northern driveway. If the City did not want to pay Taylor for the loss of access, it could have reserved an access easement to him as discussed in *Diver* at 80-81. Because this case involves a fee take and not an easement, the rights taken were not modified by the plans and specifications. *Id.*

{¶ 23} The first assignment of error is overruled.

{¶ 24} The second assignment of error involves the magistrate telling the jury what the damage to the residue would be if the City used its power of ownership in fee simple to the fullest extent. The City contends the following jury instruction was erroneous and prejudicial:

> Construction plans for the project have been placed in evidence and should be considered by you in assessing damages to the residue, if any. When assessing the impact of the project on the Defendant's property, you must assume that the property will be used in the most damaging way possible as reasonably revealed from the evidence.

{¶ 25} In *Chesapeake & H. Ry. Co. v. Snyder*, 38 Ohio App. 279, 285 (4th Dist.1931), the court stated:

> The measure of the plaintiff's recovery was, therefore, the difference between the value of the residue of his farm before it was appropriated and the value immediately after the appropriation, and its value immediately after the appropriation had to be determined after the jury had taken into consideration the most damaging situation that might result from the lawful improvements to be constructed.

{¶ 26} The Supreme Court of Ohio in *Blaisdell*, discussed above, recognized that where there are plans and specifications for a project for which an easement is being taken, damages to the residue "are limited to a consideration of the present intended use of the land taken * * * as revealed by the plans and specifications for the improvement * * * in the absence of evidence of other reasonably foreseeable damages." *Id.* at paragraph two of the syllabus.

{¶ 27} The evidence before the jury showed that Westerville would have the power after the take to deny access to the property occupied by the bank. There was evidence in the record that Westerville contemplated constructing a brick screening wall running along the frontage of Taylor's property and through the northern driveway. A document called the "Streetscape Plan" depicted how Westerville would like to see the property developed discussing, among other things, ornamental iron fencing, certain curb cuts eliminated or consolidated, and landscaping, buffering, and screening as components of the overall plan. The jury did not have to assess damages based upon the theory of what Westerville would do if it did not use the full ownership powers it received. The jury needed to assess damages based upon the damage to the residue of the land ownership that the City received.

{¶ 28} The trial court instructed the jury to assess damages based on what the evidence reasonably revealed. Taylor and the bank did not have to hope for good will

from the City or even for common sense on the issue of closing off the driveways. If the City later decided a bank was not the building it wanted at the gateway to the City and later decided that beautification required a more attractive street view than an aging bank building, the City had the power to make the building unusable for commercial purposes. The only time to compensate Taylor for the losses which could flow from the City's take was now. Therefore, consideration of such damages by the jury was not speculative, rather it was reasonably foreseeable and was not prejudicial error.

{¶ 29} The second assignment of error is overruled.

{¶ 30} In the third assignment of error, the City contends it was error for the magistrate to instruct the jury that a property owner is entitled to compensation for any governmental action that substantially or unreasonably interferes with that property owner's visibility over the public street or roadway.

{¶ 31} The parties disagreed factually over how the City's plans would impede views to and from the residue. But the legal issue is whether Taylor was entitled to compensation for loss of visibility due to the landscape easement.

{¶ 32} The City chiefly relies on *State ex rel. Schiederer v. Preston*, 170 Ohio St. 542 (1960) for the proposition that if an improvement for street purposes interferes with the landowner's unobstructed view over the street, such interference is not a compensable taking. In *Scheiderer*, however, the issue was whether raising the grade in a street in front of a landowner's property constituted a taking. If there is no taking, there can be no recovery of damages. *Hurst v. Starr*, 79 Ohio App.3d 757, 763 (1oth Dist.1992). Here, the City already has appropriated the landowner's property for a landscape easement that can be used to block visibility of the commercial property. When the City appropriated the strip of land across the portion of Taylor's property that faced Heatherdown Drive, Taylor lost control of the use of that property and the City obtained the right to use that property in a way that obstructs visibility from the road. The City's planning director testified that Taylor will not be permitted to remove anything constructed in the landscape area.

{¶ 33} For a commercial property, visibility is often integral to the success of the commercial venture. The jury heard evidence that before the take, Taylor's property was a highly desirable, high intensity commercial site, but after the take, denial of access and loss of visibility changed the property's highest and best use to a low intensity commercial

use. This is not a situation where the City is potentially obstructing the view by altering an existing highway, raising the grade on a street, or placing a divider strip in the middle of an existing roadway as discussed in the cases cited by the City. Those cases are distinguishable because the governmental entity was exercising its right to make a reasonable use of its own property and there was no compensable take. But here, there was a take. Westerville has acquired a landscape easement that it intends to use to block views of the property from Heatherdown Drive.

{¶ 34} In assessing damages to the residue as a result of a taking, the jury is to consider those factors that would enter into a prudent businessperson's determination of value. *Proctor v. NJR Properties, LLC,* 175 Ohio App.3d 378, 2008-Ohio-745, ¶ 15 (12th Dist.). Two key elements that a willing buyer would consider in purchasing the residue that could potentially devalue the property were access and visibility. Therefore, it was not error to instruct the jury that loss of visibility is compensable. Indeed, the City's own appraiser acknowledged that loss of visibility can cause damage to the residue.

{¶ 35} The third assignment of error is overruled.

{¶ 36} The failure to submit jury interrogatories was not an abuse of discretion. The jury had extensive information about the damage to the residue and an extended jury charge. This verdict was in accord with the evidence and the charge it received. The fourth assignment of error is overruled.

{¶ 37} Given our disposition of the four assignments of error, there is no need to address the conditional cross-assignments of error. Therefore, they are rendered moot.

{¶ 38} Based on the foregoing, the City's four assignments of error are overruled, the conditional cross-assignments of error are rendered moot, and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

DORRIAN and O'GRADY, JJ., concur.

———————————