[Cite as *Father's House Internatl., Inc. v. Kurguz*, 2016-Ohio-5945.]

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

The Father's House International, Inc.,       :

      Plaintiff-Appellee,       :

                                    No. 15AP-1046

v.       :       (C.P.C. No. 13CV-8622)

Timothy M. Kurguz,       :       (REGULAR CALENDAR)

      Defendant-Appellant.       :

---

### D E C I S I O N

#### Rendered on September 22, 2016

---

**On brief:** *Doucet & Associates Co., L.P.A.*, and *Andrew J. Gerling*, for appellee. **Argued:** *Andrew J. Gerling.*

**On brief:** *John L. Onesto*, for appellant. **Argued:** *John L. Onesto.*

---

APPEAL from the Franklin County Court of Common Pleas

SADLER, J.

{¶ 1} Defendant-appellant, Timothy M. Kurguz, appeals from a judgment of the Franklin County Court of Common Pleas in favor of plaintiff-appellant, The Father's House International, Inc. For the reasons that follow, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} Appellant is the owner of certain commercial real estate in the city of Columbus, Ohio ("city"). Appellee is a non-profit organization. On September 29, 2010, the parties entered into a land installment sales contract ("contract") whereby appellant agreed to purchase certain commercial land and buildings located at 511 Industrial Mile Road in Columbus, Ohio for a total purchase price of $550,000. The contract provided that appellee was to pay 12 monthly installments of $2,500, followed by 48 monthly

installments of $3,300, and a balloon payment for the remaining purchase price on the 61st month.  (Pl.'s Ex. 2, paragraph 2.1.)  Appellee was also responsible for the payment of taxes and utilities.

{¶ 3}  On or about September 29, 2010, appellee took possession of the property. Pursuant to a subsequent agreement between appellee and the city, the city's Community Shelter Board ("Shelter Board") provided more than $100,000 in grant funding to appellee for improvements to the property required by the Shelter Board in order to sublease the property to the Y.M.C.A. for the operation of a homeless shelter.[1]  In October 2012, appellant, as the property owner, submitted an application to the city for a certificate of zoning compliance, commercial construction, wherein appellant identified the intended use of the property as "social services/overflow homeless shelter."  (Pl.'s Ex. 9.)  Appellee subsequently made more than $128,000 worth of improvements to the property over the next two years.

{¶ 4}  According to appellee, on or about August 2011, appellee, by and through Pastor Bobby Mitchell and Pastor John Hensley, met with appellant regarding a proposed modification to the terms of the contract.  According to appellee, as a result of that meeting, the parties agreed to an oral modification of the contract whereby the monthly installment payments were to remain at $2,500 per month after the initial 12-month period with a corresponding increase in the balloon payment on the 61st month.  Appellee further claims that, pursuant to the modified contract, if appellee failed to pay the full balance of the contract on or before November 2013, appellant would regain possession of the property including the improvements.  Appellant has denied that such a modification occurred.

{¶ 5}  In September 2012, the Shelter Board began leasing the premises from appellee at a monthly rent of $5,500.  On April 12, 2013, appellant sent a letter to appellee entitled "Notice of Forfeiture and Notice to Leave," wherein appellant declares a default of the contract and demands payment as follows: "[n]on-payment of water services * * * in excess of $2,700.00"; "[n]on-payment of electric services * * * of $9,227.85, for which the vendor has threatened to file a mechanic's lien"; and "[n]on-payment of monthly

---

[1] The city of Columbus is not a party to this action.

installment[s] * * * in the mount of $13,600..00"  (Pl.'s Ex. 13.)  In June 2013, when the parties could not reconcile their differences, appellee stopped making payments under the contract.  In August 2013, the lease between appellee and the city terminated and the Y.M.C.A. vacated the premises.

{¶ 6}  On or about August 5, 2013, appellant filed an eviction action against appellee captioned *Kurguz v. Father's House,* Franklin Cty. M.C. No. 2013 CVG 0249858. On August 6, 2013, appellee filed the instant action against appellant in the Franklin County Court of Common Pleas alleging statutory violations, unjust enrichment, quantum meruit, and breach of contract.  On August 20, 2013, appellee's legal counsel sent a letter to appellant notifying appellant that appellee was rescinding the contract and vacating the property. [2]  As of the date of the letter, appellee had made installment payments under the contract totaling $80,000.  On October 16, 2013, appellant filed an answer to the complaint and a counterclaim seeking damages for breach of contract and declaratory relief.

{¶ 7}  On January 10, 2014, the trial court issued a decision on appellant's motion for partial summary judgment whereby the trial court cancelled the contract and extinguished any equitable interest appellee may have had in the property.  The parties subsequently filed cross-motions for summary judgment on the remaining claims in the case.  On October 27, 2014, the trial court issued a decision and entry partially granting both motions.  The trial court determined that the only reasonable conclusion to draw from the evidence submitted in connection with the motion for summary judgment was that the parties orally modified the contract with regard to the monthly installment payments and that appellant breached the contract by demanding installment payments in excess of the amount required by the contract, as modified.  Additionally, the trial court determined that the only reasonable conclusion to draw from the evidence submitted in connection with the motion for summary judgment was that appellee also breached the contract by failing to timely pay taxes and utilities.  The trial court held that genuine

---

[2] Appellant claims that appellee's lease agreement with the city terminated due to appellee's decision to rescind the contract.

issues of material fact existed as to which of the parties first committed a breach of the contract and whether that breach was material to the contract.[3]

{¶ 8} The case was subsequently tried to a jury. The jury found in favor of appellee as to the claim for breach of contract set out in the complaint and awarded damages of $62,000. The jury found in appellee's favor on the counterclaim. In responding to interrogatories, the jury found that appellant had materially breached the contract and that appellee had substantially performed the contract. On October 22, 2015, the trial court entered judgment in favor of appellee in accordance with the jury verdict. In its judgment entry, the trial court expressly found "no just cause for delay."[4]

{¶ 9} Appellant filed a notice of appeal to this court from the judgment of the trial court.

## II. ASSIGNMENTS OF ERROR

{¶ 10} Appellant assigns the following as error:

I. It was error for the Trial Court to refuse to charge the jury with the Defendant/Appellant's requested instruction that the measure of damages for breach of a land contract is the difference between the contract price and the value of the real estate at the time of the breach.

II. It was error for the trial court to overrule Defendant/Appellant's motion for directed verdict based on Plaintiff/Appellee's failure to prove its damages to a reasonable certainty. Further, the Trial Court overruled Defendant/Appellant's motion notwithstanding the verdict after the jury returned its verdict.

III. It was error for the Trial Court to give the instruction ... "If you find by the greater weight of the evidence that the plaintiff elected to rescind the contract or cancel the contract...."

IV. If it was not error for the Trial Court to give the instruction stated in Assignment of Error III, above, regarding whether Father's House rescinded the contract, the Trial Court erred by not giving the instruction that the jury could award Kurguz the fair rental value of Father's House occupancy of the real

---

[3] The trial court further determined that R.C. Chapter 5313 did not apply to the contract and that appellant was entitled to judgment as a matter of law as to appellee's claim predicated on statutory violations.
[4] The trial court had earlier determined that, pursuant to Civ.R. 42, appellee's equitable claims would be tried separately.

estate minus the payment's Father's House had made by virtue of the land contract.

## III.  STANDARD OF REVIEW

{¶ 11} A trial court is obligated to provide jury instructions that correctly and completely state the law.  C*romer v. Children's Hosp. Med. Ctr. of Akron*, 142 Ohio St.3d 257, 2015-Ohio-229, ¶ 22, citing *Sharp v. Norfolk & W. Ry. Co.*, 72 Ohio St.3d 307, 312 (1995).  The jury instructions must also be warranted by the evidence presented in a case. *Id.*, citing *Estate of Hall v. Akron Gen. Med. Ctr.*, 125 Ohio St.3d 300, 2010-Ohio-1041, ¶ 26.  The question of whether a jury instruction is legally correct and factually warranted is subject to de novo review. *Id.* An inadequate instruction that misleads the jury constitutes reversible error.  *Marshall v. Gibson*, 19 Ohio St.3d 10, 12 (1985).  Our standard of review when it is claimed that improper jury instructions were given is to consider the jury charge as a whole and determine whether the charge misled the jury in a manner affecting the complaining party's substantial rights.  *Dublin v. Pewamo Ltd.*, 194 Ohio App.3d 57, 2011-Ohio-1758, ¶ 28 (10th Dist.), citing *Kokitka v. Ford Motor Co.*, 73 Ohio St.3d 89, 93 (1995).

{¶ 12} A trial court, however, has discretion whether to give a requested jury instruction based on the dispositive issues presented during trial.  *Renfro v. Black*, 52 Ohio St.3d 27, 31 (1990).  An appellate court reviews a trial court's refusal to provide a requested jury instruction for an abuse of discretion.  *State v. Norman*, 10th Dist. No. 12AP-505, 2013-Ohio-1908, ¶ 36, citing *State v. Wolons*, 44 Ohio St.3d 64, 68 (1989). "However, '[t]he trial court need not give a proposed instruction in the precise language requested by its proponent, even if it properly states an applicable rule of law.  The court retains discretion to use its own language to communicate the same legal principles.' " *Id.* at ¶ 46, quoting *Youssef v. Parr, Inc.*, 69 Ohio App.3d 679, 691 (8th Dist.1990). "Ultimately, we need not disturb a trial court's refusal to give a requested jury instruction absent an abuse of discretion." *Id.*, citing *Wolons* at 68.

## IV.  LEGAL ANALYSIS

{¶ 13} Because appellant's second assignment of error challenges the trial court's rulings on appellant's motion for directed verdict and motion for judgment notwithstanding the verdict ("JNOV"), we will consider it last.

### A. First Assignment of Error

{¶ 14} In appellant's first assignment of error, appellant argues that the trial court erred when it failed to instruct the jury that the proper measure of damages for the breach of a land installment contract is the difference between the contract price and the value of the real estate at the time of the breach. Appellee contends that appellant waived any trial court error regarding the court's failure to give the instruction at issue because appellant failed to object to the trial court's jury instructions.[5]

{¶ 15} "It is well settled that the 'failure to timely advise a trial court of possible error, by objection or otherwise, results in a waiver of the issue for purposes of appeal.' " *Westerville v. Taylor*, 10th Dist. No. 13AP-806, 2014-Ohio-3470, ¶ 12, quoting *Goldfuss v. Davidson,* 79 Ohio St.3d 116, 121 (1997). Civ.R. 51(A) provides:

> On appeal, a party may not assign as error the giving or the failure to give any instruction unless the party objects *before the jury retires to consider its verdict*, stating specifically the matter objected to and the grounds of the objection.

(Emphasis added.)

{¶ 16} In response to appellee's waiver argument, appellant points to the decision of the Supreme Court of Ohio in *Krischbaum v. Dillon*, 58 Ohio St.3d 58 (1991), wherein the court discussed the purpose of the waiver rule under Civ.R. 51(A) as follows:

> Where the record affirmatively shows that a trial court has been fully apprised of the correct law governing a material issue in dispute, and that the complaining party has unsuccessfully requested the inclusion of that law in the trial court's charge to the jury, that party does not waive his objection to the court's charge by failing to make a formal objection to the charge as actually given by the trial court. *Presley v. Norwood* (1973), 36 Ohio St. 2d 29, 65 O.O. 2d 129, 303 N.E. 2d 81, paragraph one of the syllabus. The purpose of Civ. R. 51(A) is to provide a trial court with an opportunity to correct any errors in the instructions as given, and that purpose is fully served where the appellant has formally requested an instruction to the contrary, and the issue has been argued to the trial court.

---

[5] The written jury instructions are not part of the record on appeal. However, in response to appellant's assignments of error, appellee does not dispute appellant's representations as to the instruction given to the jury and those that the trial court omitted. The trial transcript does evidence the trial court's oral instructions to the jury.

> Krischbaum did not formally object to the trial court's failure to give the proposed jury instructions at issue or to the instructions the trial court gave the jury prior to retiring. However, the trial court and counsel for the parties engaged in a lengthy discussion regarding the proposed instructions at issue, making their positions clear to the trial court. Therefore, we agree with the court of appeals that Krischbaum did not waive his objections to the trial court's refusal to give the proposed instructions when he did not formally object to the given charge.

*Id.* at 61.

{¶ 17} Here, as was the case in *Krischbaum*, appellant failed to formally object to the omission of a jury instruction regarding market value before the jury retired to consider its verdict. Nor did appellant provide the trial court with a proposed jury instruction on the issue. Nevertheless, the trial transcript does reveal that the parties debated the inclusion of such an instruction:

> THE COURT: Mr. Onesto [appellant's counsel], is there something you want to add to all this?
>
> MR. ONESTO: Well, Your Honor, I have three proposals, really, after I looked at these instructions more closely. And one has to do with what I brought up before. When a purchaser or seller defaults on a contract, the sale of real estate, the proper measure of damages is the difference between the contract price and the market value of the property at the time of the breach.
>
> And the citations I'm going to give you are Roesch against Bray, 1988, 46 Ohio App. 3d 49, and Roth v. Habansky, 2003-Ohio-5378. That's number one.

(Tr. at 456-57.)

{¶ 18} Here, the parties debated the inclusion of the market value instruction in open court during proceedings to determine the proper jury charge. Appellant cited Ohio case law allegedly supporting the argument that the evidence required a market value instruction. The transcript reveals that the trial court refused to instruct the jury on the fair market value "because we didn't have appropriate testimony with regards [to] fair market value, and so I recognize to a certain extent one of the things I am concerned

about is making sure that the jury is not confused." (Tr. at 444-45.) On this record, we cannot say that appellant waived the right to challenge the omission of a market value instruction for purposes of this appeal. Accordingly, we shall address the argument raised by appellant's first assignment of error.

{¶ 19} As a general rule, "when a purchaser defaults upon a contract for the sale of real estate, the seller may recover the difference between the contract price and the market value of the property at the time of the breach." *Roesch v. Bray*, 46 Ohio App.3d 49, 50 (6th Dist.1988), citing 54 Ohio Jurisprudence 2d, Vendor and Purchaser, Section 181 at 731 (1962); 77 American Jurisprudence 2d, Vendor and Purchaser, Section 491 at 616 (1975); *McCarty v. Lingham*, 111 Ohio St. 551 (1924), paragraph three of the syllabus. This court has applied the general rule of damages whenever a buyer defaults on an installment land contract. *Mildred Hine Trust v. Buster*, 10th Dist. No. 07AP-277, 2007-Ohio-6999; *MacDonald v. Authentic Invests., LLC*, 10th Dist. No. 15AP-801, 2016-Ohio-4640.

{¶ 20} Appellant claims that the difference between the contract price and the market value of the property at the time of the breach represents the exclusive measure of damages when a seller defaults on a real estate purchase contract. However, the only case cited by appellant applying the market value analysis when the seller defaults on a real estate purchase agreement is *Roth v. Habansky*, 8th Dist. No. 82027, 2003-Ohio-5378, a case involving the sale of a residential home. There is no dispute that the property at issue in this case is commercial real estate, and there is evidence in the record that appellee made substantial improvements to the property. The evidence also shows that appellee sublet the property to the Shelter Board for $5,500 per month. Consequently, the difference between the contract price and the market value of the property at the time of the breach does not represent a true measure of appellee's expectation damages under the facts of this case, let alone the exclusive measure of appellee's damages as a result of appellant's material breach of the contract.

{¶ 21} This court discussed the purpose of contract damages in *Alternatives Unlimited-Special, Inc. v. Ohio Dept. of Edn.*, 10th Dist. No. 12AP-647, 2013-Ohio-3890:

> The purpose of contract damages is to compensate the non-breaching party for the losses suffered as a result of a breach.

> Thus, money damages awarded for breach of contract are designed to place the non-breaching party in the same position it would have been in had the contract not been violated. That position can be defined two different ways. First, a non-breaching party may recover a damage award that places it in the position it would have been had the contract been fully performed. Second, a non-breaching party may recover a damage award that places it in the position it was in before the contract was made. Placing the non-breaching party in the first position protects that party's expectation interest, i.e., its interest in having the benefit of the bargain. Placing the non-breaching party in the second position protects that party's reliance interest, i.e., its interest in being reimbursed for loss caused by reliance on the contract. Expectation damages and reliance damages are fundamentally different: "[t]he expectancy recovery affirms the existence of a contract; the reliance recovery tries to deny it." Hunter, Modern Law of Contracts, Section 14:4 (2013).

(Citations omitted.) *Id.* at ¶ 29.

{¶ 22} Remedies for a breach of contract also include restitution, which is the non-breaching party's interest in recovering the benefit conferred on the other party. Restatement 2d of Contracts, § 344(c). "It is well-established that 'where there has been a material breach of contract by one party, the other party may treat the contract as terminated and rescind it or may sue for damages.' " *Zito v. Tamborski*, 11th Dist. No. 2003-L-178, 2005-Ohio-1799, ¶ 23, quoting *McDonagh v. Cortland Sav. & Banking Co.*, 11th Dist. No. 2002-T-0138, 2004-Ohio-1146, ¶ 38. Consequently, even if the difference between the contract price and the market value of the property at the time of the breach was an appropriate method for determining appellee's expectation damages in this case, it was not the exclusive measure of such damages, nor was it the exclusive remedy available to appellee. *See Habansky* (specific performance is an available remedy for the purchaser where the seller defaults on a real estate purchase agreement).

{¶ 23} The trial court instructed the jury as to expectation damages as follows:

> [I]f you find by the greater weight of the evidence that either party breached the contract, then the party is entitled – that party is entitled to damages in the amount sufficient to place him, her, or it in the same position in which he, she, or it would have been if the contract had been fully performed by

> the breaching party to the extent that the damages are reasonably certain and reasonably foreseeable.
>
> [Y]ou can only award damages where the existence and the amount of which are reasonably certain and have been proven to you by the greater weight of the evidence. You may not award damages that are remote or damages that are speculative.

(Tt. at 527-28.)

{¶ 24} We find that the instruction given by the trial court properly states the law as it relates to expectation damages for breach of contract. *See Alternatives Unlimited-Special.* We disagree with appellant's contention that damages measured by the difference between the contract price and the market value of the property at the time of the breach was the exclusive remedy available to appellee. Moreover, on this record, we hold that the trial court did not abuse its discretion when it refused to give a market value instruction. Appellant's first assignment of error is overruled.

## B. Third Assignment of Error

{¶ 25} In appellant's third assignment of error, appellant contends that the trial court erred when it instructed the jury on rescission and restitution even though appellant, before the case was submitted to the jury, expressly elected to seek expectation damages based on an alleged material breach of contract by appellant. We disagree.

{¶ 26} " '[I]n order that an election of one remedial right shall be a bar to the pursuit of another, or other remedial rights, the same must be inconsistent and the election made with knowledge and intention and purpose to elect, and that there must be an actual election in fact made; that the mere bringing of a suit is not determinative of that right, but the party against making the election must have received some benefit under his election, or have caused detriment or loss to the other party, or pursued his remedy to final judgment.' " *Mike Castrucci Ford Sales, Inc. v. Hoover*, 12th Dist. No. CA2007-02-022, 2008-Ohio-1358, ¶ 17, quoting *Frederickson v. Nye*, 110 Ohio St. 459, 466 (1924). " '[A]n action in rescission and one in money damages are different and inconsistent remedies as a matter of law.' " *Id.* at ¶ 16, quoting *Williams v. Banner Buick, Inc.*, 60 Ohio App.3d 128, 130 (12th Dist.1989).

{¶ 27} "The party asserting the affirmative defense of election of remedies has the burden of proving that an election has occurred." *Id.* at ¶ 17. "Whether [a party has] elected the remedy of rescission is a question of fact." *Id.* at ¶ 19.

{¶ 28} In appellant's April 27, 2015 motion in limine, appellant sought an order preventing appellee from offering evidence of its expectation damages because appellee expressly elected to rescind the contract in its August 20, 2013 letter to appellant. In the trial court's July 7, 2015 decision denying appellant's motion, the trial court concluded that the question whether appellant had elected the remedy of rescission and restitution was a question of fact for the jury. The trial court subsequently instructed the jury as follows:

> If you find by the greater weight of the evidence that the plaintiff elected to rescind the contract or cancel the contract, and if you find that either, A, the plaintiff received some benefit under its election of that remedy or, B, caused the defendant a detriment, or a loss, then the plaintiff is entitled to recovery of the reasonable value of the work, services, and materials furnished by the plaintiff to the defendant. The reasonable value is not limited by the contract price and may be greater or less than the contract price, but that reasonable value is limited to the extent that the plaintiff has conferred a benefit upon the defendant by way of part performance or reliance.
>
> If you find by the greater weight of the evidence that the plaintiff is entitled to damages *and that the plaintiff did not elect to rescind or cancel the contract as set forth above*, then the plaintiff should be entitled to its expectation damages.

(Emphasis added.) (Tr. at 527.)[6]

{¶ 29} Our de novo review of the trial court's instruction reveals that the trial court properly instructed the jury on the law as it relates to rescission and restitution. *Hoover*; *Fredrickson*. We also find that the trial court did so in a manner that was designed to avoid double recovery. Because there is evidence in the record to support a finding that appellant elected to rescind the contract, the trial court did not abuse its discretion by

---

[6] The trial court went on to instruct the jury on expectation damages as set out in connection with appellant's first assignment of error.

giving the instruction at issue. Accordingly, appellant's third assignment of error is overruled.

### C. Fourth Assignment of Error

{¶ 30} In appellant's fourth assignment of error, appellant argues that the trial court erred by instructing the jury regarding rescission and restitution without also instructing the jury that appellee was entitled to a reduction in the amount of restitution based on the reasonable rental value of the property during appellee's occupancy. Appellee contends that appellant waived this challenge for purposes of appeal by failing to formally object to the jury instructions before the jury retired to consider its verdict. We agree.

{¶ 31} On June 14, 2015, appellant submitted a request for jury instructions. Appellant did not request the instruction at issue in this assignment of error. The trial transcript also reveals the following discussion regarding the instruction on rescission and restitution:

> THE COURT: Okay. Then the last paragraph or the second paragraph under election of remedies/restitution before we to get expectation damages said, hey, if they didn't rescind it, then you go into expectation damages, so that's covered.
>
> MR. GERLING: That's covered, but we still have the problem of right in the beginning it says rescind and if the instruction is to say and it's going to use the word rescind, I would just like some additional language.
>
> THE COURT: Write it out and I'll consider it.
>
> MR. GERLING: Okay. That's fine.
>
> MR. ONESTO: Would you like some additional language like in the cases here, a party rescinding, it causes the contract from the very beginning to be null and void? Would you like that language in there?
>
> MR. GERLING: Sure. Then they get $80,000 worth of payments.
>
> MR. ONESTO: No. It doesn't say that. No. It means you have no rights under the contract because there was never a contract to begin with.

THE COURT: Well, rather than debate that right now, you write your proposed language out. If you have something that you wish to add in that regard, you write that out as well, and, as I say, I will consider that. Okay?

MR. ONESTO: Okay.

THE COURT: All right. Any other objections with regards to the instructions?

MR. GERLING: Nothing from Father's House, Your Honor.

THE COURT: How about from you?

MR. ONESTO: None, Your Honor.

(Tr. at 449-50.)

{¶ 32} There is nothing in the record showing that appellant followed up on the trial court's invitation to supplement the instructions regarding rescission and restitution. Appellant did not object to the trial court's failure to give an instruction regarding the reasonable rental value before the jury retired to consider its verdict. Moreover, appellant did not expressly raise reasonable rental value as a basis for appellant's motions for directed verdict or for JNOV.

{¶ 33} The record does not affirmatively show that appellant apprised the trial court of the correct law regarding the issue of reasonable rental value or that appellant unsuccessfully requested the inclusion of a reasonable rental value instruction in the trial court's charge to the jury. Thus, the circumstances surrounding the trial court's omission of a reasonable rental value instruction are materially different than the circumstances surrounding the omission of the market value instruction discussed in appellant's first assignment of error. For the same reasons, the circumstances are distinguishable from those addressed by the Supreme Court of Ohio in the *Krischbaum* case.

{¶ 34} Based on the foregoing, the only conclusion to be drawn from the record is that appellant waived the argument raised in his fourth assignment of error by failing to object to the omission of a reasonable rental value instruction before the jury retired to consider its verdict. Accordingly, appellant's fourth assignment of error is overruled.

### D. Second Assignment of Error

{¶ 35} In appellant's second assignment of error, appellant argues that the trial court erred when it denied appellant's motion for directed verdict and for JNOV.

### 1. Directed Verdict

{¶ 36} In *Reeves v. Healy*, 192 Ohio App.3d 769, 2011-Ohio-1487, ¶ 64 (10th Dist.), this court set forth the applicable standard of review of a trial court decision denying a motion for directed verdict as follows:

> When considering a motion for a direct verdict, a court must construe the evidence most strongly in favor of the party against whom the motion is directed. Civ.R. 50(A). A motion for a directed verdict raises questions of law, not factual issues, because it tests whether the evidence is legally sufficient to allow the case to be presented to the jury for deliberation. The court's disposition of the motion thus does not involve weighing the evidence or the credibility of the witnesses. The court must deny the motion where any evidence of substantial probative value favors the nonmoving party and reasonable minds might reach different conclusions on that evidence. Because a directed verdict tests only the sufficiency of the evidence, it presents a question of law that appellate courts review de novo.

(Internal citations omitted.) *Id.* at ¶ 37.

{¶ 37} Appellant first contends that the trial court erred when it denied his motion for directed verdict because appellee failed to present evidence of the market value of the real estate at the time of the breach. As discussed in connection with appellant's first assignment of error, monetary damages measured by the difference between the contract price and the market value of the property at the time of the breach is not the only measure of appellee's expectation damages in this case, and it is not the only remedy available to appellee. *Alternatives Unlimited-Special.* Furthermore, as discussed in connection with appellant's third assignment of error, the trial court properly instructed the jury on the available remedy of rescission and restitution. Accordingly, to the extent that appellant grounded the motion for directed verdict on the lack of evidence as to the market value of the property at the time of the breach, the trial court did not err by denying the motion.

{¶ 38} Appellant argued alternatively that appellee did not produce sufficient evidence to establish either the existence or the amount of expectation damages to a reasonable degree of certainty. We disagree.

{¶ 39} As a general rule, " 'a party seeking damages for breach of contract must present sufficient evidence to show entitlement to damages in an amount which can be ascertained with reasonable certainty.' " *J&H Reinforcing & Structural Erectors, Inc. v. Ohio School Facilities Comm.*, 10th Dist. No. 12AP-588, 2013-Ohio-3827, ¶ 94, quoting *Tri-State Asphalt Corp. v. Ohio Dept. of Transp.*, 10th Dist. No. 94API07-986 (Apr. 11, 1995). " 'Contract damages must be shown with certainty and not be left to speculation.' " *Id.*, quoting *Sampson Sales, Inc. v. Honeywell, Inc.*, 8th Dist. No. 51139 (Dec. 18, 1986).

{¶ 40} Appellee produced evidence that it would have been able to make the remaining monthly installment payments under the contract, including the upcoming balloon payment. Appellee's pastor, Bobby Mitchell, testified that appellee would have been able to make the upcoming balloon payment had appellant not committed a material breach of the contract by demanding increased monthly installment payments. The balloon payment would have come due on or about November 2013. Appellant also produced evidence that it made improvements to the property costing more than $128,000. The evidence establishes that appellee obtained much of the funding for the improvements by way of a grant from the Shelter Board. There is no evidence that appellee was obligated to reimburse the grantor, and the city is not a party to this action. Pastor Mitchell further related that under the terms of the contract, as orally modified, once appellee made full payment on the contract appellee would take ownership of the property including the costly improvements. Such evidence, if believed, supports an award of expectation damages to appellee, even excluding the potential lost profits from the sublease to the Shelter Board and/or any future lessee.

### 2. Judgment Notwithstanding the Verdict

{¶ 41} A motion for JNOV is used to determine whether the evidence is totally insufficient to support the verdict. *Gilson v. Am. Inst. of Alternative Medicine*, 10th Dist. No. 15AP-548, 2016-Ohio-1324, ¶ 94, citing *Harper v. Lefkowitz*, 10th Dist. No. 09AP-1090, 2010-Ohio-6527, ¶ 8. The test applied by a trial court in ruling on a motion for JNOV is the same test to be applied on a motion for a directed verdict. *Id.*, citing *Posin v.*

*A.B.C. Motor Court Hotel, Inc.*, 45 Ohio St.2d 271, 275 (1976). Appellate review of a ruling on a motion for JNOV is de novo. *Id.*, citing *Kanjuka v. MetroHealth Med. Ctr.*, 151 Ohio App.3d 183, 2002-Ohio-6803, ¶ 14 (8th Dist.).

{¶ 42} The trial transcript reveals the following proceedings on appellant's oral motion for JNOV:

> MR. ONESTO: I have a motion.
>
> THE COURT: Okay. Would you like to put that in writing?
>
> MR. ONESTO: I would just like to put it on the record. Save time.
>
> THE COURT: Go right ahead, sir.
>
> MR. ONESTO: Notwithstanding the verdict, I would move for verdict in favor of the defendant.
>
> THE COURT: Okay. At this point I would overrule that.
>
> MR. ONESTO: Okay.
>
> THE COURT: Okay? I mean, unless there's something specific that you have in mind that you want me to hear.
>
> MR. ONESTO: No, just it's against the weight of the evidence. Let's put that on the record.
>
> THE COURT: Okay. Understood. That will be overruled.

(Tr. at 547-48.)

{¶ 43} Having rejected appellant's argument that the trial court erred when it denied appellant's motion for directed verdict and applying the same standard in reviewing the trial court's decision denying appellant's motion for JNOV, we must determine whether the evidence, when viewed in appellee's favor, supports a jury verdict in favor of appellee for $62,000. Civ.R. 50(B). As stated above, appellee's evidence, if believed, supports an award of expectation damages of $62,000, even if the potential lost

profits from the sublease to the Shelter Board and/or any future lessee is excluded and even if appellee's liability for taxes and utilities is considered.[7]

{¶ 44} Moreover, the jury verdict forms and jury interrogatories did not ask the jury to identify the basis of its damage award, just the amount. Because the jury was not asked to specify whether it found that appellee had elected the remedy of rescission, the record contains no indication whether the $62,000 verdict represents restitution damages or expectation damages. Consequently, even if we were to conclude that the weight of the evidence did not support expectation damages of $62,000, we would be required to affirm the judgment of the trial court if the evidence in the record, when viewed in appellee's favor, supports a finding by the jury that appellee elected to rescind the contract.

{¶ 45} There is no dispute that appellee paid appellant $80,000 under the contract during its occupancy of the premises and made improvements to the property costing $128,000, a portion of which were paid for by appellee. Because the evidence, when construed most strongly in appellee's favor, shows that appellant has retained the payments made by appellee as well as the improvements to the real property at issue, the evidence supports an award of restitution damages in the amount found by the jury.

{¶ 46} For the foregoing reasons, appellant's second assignment of error is overruled.

## V. CONCLUSION

{¶ 47} Having overruled appellant's four assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

DORRIAN, P.J., and BRUNNER, J., concur.

_____

---

[7] The trial court's decision on summary judgment found appellee liable to appellant, as a matter of law, for a water bill of $2,737.34 and taxes of $2,127.27.